**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| K.MIZRA LLC, | Civil Action No.: 1:25-cv-00236-ADA |
| Plaintiff, | |
| v. | Jury Trial Demanded |
| GOOGLE LLC, | |
| Defendant. | |

**K.MIZRA LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     AGREED-TO CONSTRUCTION ............................................................................. 1

III.    ARGUMENT ............................................................................................................. 2

      A.     Term 1: "protected network" (all asserted claims) ...................................... 2

      B.     Term 2: "trusted computing base" (all asserted claims) ................................ 4

      C.     Term 3: "valid digitally signed attestation of cleanliness"
           (all asserted claims) ....................................................................................... 6

      D.     Term 4: "includes at least one of an . . . and an . . ." ('705 Pat.,
           all asserted claims) ........................................................................................ 7

      E.     Term 5: "quarantine" or "quarantining" (all asserted claims) ..................... 11

      F.     Term 6: "quarantine server" (all asserted claims) ....................................... 13

      G.     Term 7: "a remediation host configured to provide data usable
           to remedy the insecure condition" (all asserted claims) ............................... 14

IV.     CONCLUSION ........................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*3rd Eye Surveillance, LLC v. United States*,
  No. 15-501C, 140 Fed. Cl. 39 (2018) ....................................................................... 9

*AlmondNet, Inc. v. Microsoft Corp.*,
  6:21-cv-00897-ADA,
  2023 WL 11983063 (W.D. Tex. June 19, 2023) ........................................................ 2

*Apex Inc. v. Raritan Comput., Inc.*,
  325 F.3d 1364 (Fed. Cir. 2003) ............................................................................... 16

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ............................................................................... 16

*Apple, Inc. v. Evolved Wireless LLC*,
  Case IPR2016-01177,
  2017 WL 6543970 (P.T.A.B. Dec. 20, 2017)........................................................... 10

*Budde v. Harley-Davidson, Inc.*,
  250 F.3d 1369 (Fed. Cir. 2001) ............................................................................... 19

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004) ............................................................................... 11

*Chrimar Holding Co., LLC v. ALE USA Inc.*,
  732 F. App'x 876 (Fed. Cir. 2018) .......................................................................... 15

*Dyfan, LLC v. Target Corp.*,
  28 F.4th 1360 (Fed. Cir. 2022) ............................................................... 14, 15, 16, 18

*Firtiva Corp. v. Funimation Glob. Grp., LLC*,
  No. 2:21-cv-00111-JRG-RSP,
  2022 WL 23165 (E.D. Tex. Jan. 3, 2022).................................................................. 9

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) ................................................................................. 2

*Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*,
  649 F.3d 1350 (Fed. Cir. 2011) ............................................................................... 17

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
  No. 6:16-CV-01003,
  2017 WL 10185852 (E.D. Tex. Dec. 12, 2017)......................................................... 9

*K.Mizra LLC v. Cisco Sys., Inc.*,
  No. 6:20-cv-01031-ADA (W.D. Tex. Oct. 7, 2021).................................................. 1

*K.Mizra LLC v. Hewlett Packard Enter.,*
  No. 2:21-cv-00305-JRG (E.D. Tex. Nov. 21, 2023) .......................................... 1, 6

*K-2 Corp. v. Salomon S.A.,*
  191 F.3d 1356 (Fed. Cir. 1999) ......................................................... 3, 11

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  358 F.3d 893 (Fed. Cir. 2004) .............................................................. 7

*Lodsys, LLC v. Brother Intern. Corp.,*
  No. 2:11-CV-00090-JRG,
  2013 WL 2949959 (E.D. Tex. June 14, 2013) ...................................... 3, 11

*Mad Dogg Ath., Inc. v. Peloton Interactive, Inc.,*
  No. 2:20-cv-00382-JRG,
  2021 WL3200994 (E.D. Tex. July 28, 2021) ........................................... 15

*MicroPairing Techs. LLC v. General Motors LLC,*
  No. 6:21-cv-00761-ADA,
  2022 WL 2442167 (W.D. Tex. July 5, 2022) ........................................... 10

*MicroPairing v. Toyota Motor Mfg. Texas Inc.,*
  No. SA-21-cv-00940-XR,
  2022 WL 62540 (W.D. Tex. Jan. 5, 2022) ............................................... 10

*Nomadix, Inc. v. Hosp. Core Servs. LLC,*
  No. CV 14-08256 DDP (VBKx),
  2016 WL 344461 (C.D. Cal. Jan. 27, 2016) ............................................. 17

*Parkervision, Inc. v. Texas Instr. Inc.,*
  No. 6:23-CV-00384-ADA,
  2024 WL 4901932 (W.D. Tex. Oct. 21, 2024) ........................................... 7

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 3, 15

*Shotkam LLC v. Tachyon, Inc.,*
  No. H-20-1070,
  2021 WL 23311 (S.D. Tex. Jan. 4, 2021) .................................................. 9

*SitePro, Inc. v. Waterbridge Res. LLC,*
  No. 6:23-cv-115-ADA-DTG,
  2024 WL 760923 (W.D. Tex. Feb. 23, 2024) ........................................ 12, 13

*SkyHawke Techs., LLC v. DECA Int'l Corp.,*
  CV 18-1234-GW(PLAx),
  2019 U.S. Dist. LEXIS 220590 (C.D. Cal. Dec. 23, 2019) ............................ 15

*Sonrai Memory Ltd. v. Oracle Corp.*,
No. 1:22-cv-94-LY,
2022 WL 800730 (W.D. Tex. Mar. 16, 2022) ................................................................... 15, 17

*Sound View Innovations, LLC v. Facebook, Inc.*,
No. 16-cv-116 (RGA),
2017 WL 2221177 (D. Del. May 19, 2017) .......................................................................... 17

*SuperGuide Corp. v. DirecTV Enter., Inc.*,
358 F.3d 870 (Fed. Cir. 2004) ............................................................................................... 9

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ............................................................................... 2, 3, 6, 13

*Triton Tech. of Tex., LLC v. Nintendo of Am., Inc.*,
753 F.3d 1375 (Fed. Cir. 2014) ........................................................................................... 19

*Zeroclick, LLC v. Apple Inc.*,
891 F.3d 1003 (Fed. Cir. 2018) ........................................................................................... 18

## Other Authorities

Dep't of Def. Standard: Dep't of Def. Trusted Computer
Sys. Evaluation Criteria (Dec. 1985) ...................................................................................... 5

MICROSOFT COMPUTER DICTIONARY (5th ed. 2002) ..................................................................... 5

## I.    INTRODUCTION

The Court is familiar with the patented technology and the two patents at issue in this case (U.S. Patent Nos. 8,234,705 (the "'705 Patent") and 9,516,048 (the "'048 Patent")[1]) as both patents were previously asserted and litigated in *K.Mizra LLC v. Cisco Sys., Inc.*, No. 6:20-cv-01031-ADA (W.D. Tex.). In that case, the Court issued a claim construction order, a summary judgment order, and numerous other orders. The Court also is well-versed in claim construction law and principles, so those will not generally be repeated here, except to emphasize that there is a strong presumption that claim terms should be given their plain-and-ordinary meanings. Suffice it to say that K.Mizra believes the Court should adopt the same constructions it previously adopted[2], rule that the remainder of the disputed terms carry their plain-and-ordinary meanings, and find that the "remediation host" term does not render the claims indefinite.

## II.    AGREED-TO CONSTRUCTION

K.Mizra and Google agree that the term "trusted platform module" should be construed in the same manner as in the *K.Mizra v. Cisco* Claim Construction Order (Doc. 46); specifically, as "a secure cryptoprocessor that can store cryptographic keys and that implements the Trusted Platform Module's specification from the Trusted Computing Group." *See* Google's Opening Claim Construction Brief (Doc. 42) ("Google Br.") at 2.

---

[1] The '705 and '048 Patents share a common specification. For purposes of this Brief, K.Mizra cites to the '705 Patent specification only.

[2] "Trusted computing base" and "trusted platform module" were previously construed by this Court and by the Honorable Judge Rodney Gilstrap of the Eastern District of Texas. *See K.Mizra LLC v. Cisco Sys., Inc.*, No. 6:20-cv-01031-ADA (W.D. Tex. Oct. 7, 2021), Doc. 46 (claim construction order); *see also K.Mizra LLC v. Hewlett Packard Enter.*, No. 2:21-cv-00305-JRG (E.D. Tex. Nov. 21, 2023), Doc. 132 (claim construction memorandum and order); Declaration of Bart A. Starr ("Starr Decl."), Ex. 1 ¶ 3.

## III.   ARGUMENT

There are "*only two exceptions*" to the heavy presumption that claim terms are construed according to their plain-and-ordinary meaning: (1) when the patentee acts as his or her own lexicographer; or (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution. *See AlmondNet, Inc. v. Microsoft Corp.*, 6:21-cv-00897-ADA, 2023 WL 11983063, at *2 (W.D. Tex. June 19, 2023) (quoting *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)) (emphasis added). The standards for finding either lexicography or disavowal "are *exacting*." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (emphasis added). For example, patentees acting as their own lexicographers must clearly set forth a definition of the disputed term and clearly express an intent to define the term. *See AlmondNet,* 2023 WL 11983063, at *2 (citing *Thorner*, 669 F.3d at 1365).

### A.   Term 1: "protected network" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | private network, distinct from public networks like the Internet |

Google seeks to rewrite the meaning of "protected network" by reading out the claimed adjective "protected" (chosen by the patentees) and replacing it with the unclaimed adjective "private." But the plain language of the term "*protected* network" does not require, indicate, or even imply whether the network is private or public. The plain language simply and unambiguously states that the claimed network is *protected*. If the patentees had intended to claim a "*private* network" versus a "*protected* network," they certainly knew how to do so. *See* '705 Patent, 11:67 (referring to a "protected network" versus a "private network"). But the patentees chose to claim a "protected network," and there is no support in the intrinsic or extrinsic evidence for the proposition advanced by Google that "protected" is synonymous with "private." Because it "is not the province of the Court, during claim construction, to re-write the claims," Google's attempt to redraft the claim language should be rejected. *Lodsys, LLC v. Brother Intern. Corp.*,

No. 2:11-CV-00090-JRG, 2013 WL 2949959, at *25 (E.D. Tex. June 14, 2013); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

Google itself concedes that the asserted patents are directed to "techniques for network *security*" or, in other words, network *protection*. Google Br. at 1 (emphasis added). Google's characterization of the asserted patents further supports the fact that the claimed network is a "protected network" by virtue of, among other things, contacting a trusted computing base, receiving a digitally signed attestation of cleanliness, determining whether a "host" computer should be quarantined, and allowing for the remediation of a quarantined host computer. *See id*. A POSITA and jury would understand that such a network is a *protected* network.

The term "protected network" is also not subject to either of the two exceptions to the heavy presumption that claim terms should be given their plain-and-ordinary meaning. The patentees here did not act as their own lexicographers or disavow the full scope of the term "protected network" either in the specification or prosecution history, and Google does not argue otherwise. *See, e.g.*, *Thorner*, 669 F.3d at 1368 (term "attached" entitled to its plain and ordinary meaning).

Finally, in its effort to re-write the claims by replacing "protected" with "private," Google offers extrinsic evidence from the RFC Site Security Handbook, a U.S. General Accounting Office report, and an issued patent. *See* Google Br. at 4. However, none of Google's three citations to extrinsic evidence recite both the terms "protected network" and "private network" in the same quotation, and none use the terms synonymously or interchangeably. Google's extrinsic evidence should be given no weight and the term should carry only its plain and ordinary meaning into trial. *See, e.g., Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("We have viewed extrinsic

evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms, for several reasons.").

B.     **Term 2: "trusted computing base" (all asserted claims)**

| K.Mizra's Construction | Google's Construction |
|---|---|
| hardware or software that has been designed to be a part of the mechanism that provides security to a computer system | hardware or software within the first host that provides security to the host |

Each asserted claim recites "a trusted computing base associated with a trusted platform module within the first host." *See, e.g.*, '705 Patent, 22:21-22 (claim 19). While the plain language of the claims *do* require that the "trusted platform module" *be located* "within the first host," they textually *do not* require that the "trusted computing base" also *be located within the first host*. *See id*. Again, Google is trying to import a nonexistent limitation into the claims in an attempt to avoid infringement liability.

The claim language requires only that the trusted computing base be "*associated with*" a trusted platform module. *See id*. (emphasis added). If the patentees had intended the trusted computing base to be *within* the first host, they could easily have claimed "a trusted computing base within the first host and associated with a trusted platform module within the first host." But they did not. For this reason alone, the Court should adopt K.Mizra's proposed construction of this term.

Google argues that the specification compels the conclusion that the trusted computing base ("TCB") must be within the first host. *See, e.g.*, Google Br. at 6. It does not. Instead, the specification simply indicates that the TCB may, as one example, be "within a computer." '705 Patent, 13:67. The specification does not dictate on which computer(s) the TCB's hardware/software resides, and that computer can be virtually anywhere within the system, including on a computer other than the first host. Google also suggests that the prosecution history supports the conclusion that the TCB constitutes hardware or software that provides security only

to the first host (versus to the entire system). To the contrary, the prosecution history compels the interpretation that the TCB's hardware/software provides security *to the entire computer system*, as K.Mizra contends and as Judge Gilstrap found. The passage from the prosecution history (*cited by Google itself*) demonstrates that K.Mizra's proposed construction is correct: "A given piece of *hardware or software* is a part of the [trusted computing base] if and only if it has been designed to be a part of the mechanism that *provides its security to the computer system*." Google Br. at 7 (citing Google's Exhibit 6) (emphases added). This intrinsic evidence supports K.Mizra's proposed construction that the "trusted computing base" provides security to the entire computer system or network, not just to the "first host" computer.

Extrinsic evidence also supports K.Mizra's proposed construction of this term. As one example, the 2002 Microsoft Computer Dictionary cited by both parties defines a trusted computing base ("TCB") as "[t]he complete set of security mechanisms that *create security on a network*" and "includes all the *hardware, software*, and firmware components that are responsible for *system security*." Starr Decl. Ex. 2, at 512 (MICROSOFT COMPUTER DICTIONARY (5th ed. 2002)) (emphases added). As another example, the 1985 Department of Defense's Trusted Computer System Evaluation Criteria (arguably one of the first publications to address the term) defined a TCB as "[t]he totality of protection mechanisms *within a computer system*—including *hardware*, firmware, and *software*—the combination of which is responsible for enforcing a security policy." Starr Decl. Ex. 3, at 112 (Dep't of Def. Standard: Dep't of Def. Trusted Computer Sys. Evaluation Criteria (Dec. 1985)) (emphases added). This extrinsic evidence confirms that a TCB's hardware/software provides security to the entire computer system or network, not just to the "first host" computer.

The Court should adopt K.Mizra's proposed construction of "trusted computing base."

### C.    Term 3: "valid digitally signed attestation of cleanliness" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | plain and ordinary meaning, wherein the plain and ordinary meaning is that the "attestation of cleanliness" is digitally signed by and received from the "trusted computing base" |

First, the term "valid digitally signed attestation of cleanliness" is not subject to either of the two exceptions to the heavy presumption that claim terms should be given their plain-and-ordinary meaning. The patentees did not act as their own lexicographers by clearly setting forth a definition of this term or clearly expressing an intent to define this term, and Google does not argue that they did so. Nor did the patentees disavow the full scope of the term "valid digitally signed attestation of cleanliness" either in the specification or prosecution history, and Google does not state otherwise. The term should thus be given its plain-and-ordinary meaning. *See Thorner*, 669 F.3d at 1367.

Second, Google improperly suggests that the "attestation of cleanliness" must be "digitally signed" *by the trusted computing base*. Google Br. at 10. Judge Gilstrap of the Eastern District of Texas previously addressed this term in *K.Mizra LLC v. Hewlett Packard Enterprise Co.,* No. 2:21-cv-00305-JRG (E.D. Tex. Nov. 21, 2023). In his thorough Claim Construction Memorandum and Order, Judge Gilstrap noted that the "attestation of cleanliness" must be "*received from*" the "trusted computing base." Starr Decl. Ex. 1, at 10-11 (emphasis added). Judge Gilstrap, however, did *not* conclude or suggest that the "attestation of cleanliness" must also be *signed by* the "trusted computing base." *Id.* Google improperly seeks to read the qualifying and narrowing language "digitally signed by" into Judge Gilstrap's prior claim construction order. Doing so would invite legal error. Indeed, Google simply argues, without any support, that a "clarification that the 'attestation of cleanliness' is digitally signed by and received from the 'trusted computing base' is a *natural extension* of Judge Gilstrap's clarification . . . ." Google Br. at 11 (emphasis added). But

there is nothing "natural" about modifying Judge Gilstrap's Order, rewriting the claims, or reading embodiments into the claims, as Google asks this Court to do.

Finally, the claims do *not* recite that the attestation of cleanliness is signed by the TCB. Rather, the best Google can muster is a specious argument that a single passage from the specification supports its position. In pressing this position, though, Google fails to mention that the cited specification passage is preceded by the qualifying phrase "[i]n some embodiments." Google Br. at 10. The entire passage from the specification reads: "*In some embodiments*, trusted code bases *may* digitally sign assertions about the cleanliness (e.g., infestation status) and/or state of their computers." '705 Patent, 14:10-12 (emphasis added). Google's claim construction position is based on an improper attempt to read a permissive but not mandatory embodiment from the specification into the claims. As this Court has observed, it is improper "to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Parkervision, Inc. v. Texas Instr. Inc.*, No. 6:23-CV-00384-ADA, 2024 WL 4901932, at *5 (W.D. Tex. Oct. 21, 2024) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 893, 913 (Fed. Cir. 2004)).

The term "valid digitally signed attestation of cleanliness" should be given its plain-and-ordinary meaning.

### D. Term 4: "includes at least one of an . . . and an . . ." ('705 Patent, all asserted claims)

| K.Mizra's Construction | Google's Construction |
| --- | --- |
| plain and ordinary meaning | includes at least one of an . . . and at least one of an . . . |

Google contends that this term should be read in the *conjunctive* as requiring *both* options listed after the introductory phrase "includes at least one of . . . ." Not so. The term logically, textually, and in light of the intrinsic record should be read in the *disjunctive* as requiring *either* of

two options or alternatives: (1) an attestation that the TCB has ascertained that the first host is not infested; or (2) an attestation that the TCB has ascertained the presence of a patch or patch level associated with a software component on the first host. *See* '705 Patent, 22:26-31 (reciting "at least one of . . . and . . .").

The '705 Patent claims provide for two separate and distinct attestation options. The *first option* recited after the phrase "at least one of" is an attestation that the TCB has ascertained that the first host is not infested. This option is described in the specification, which provides that in at least one embodiment, "assertions about the cleanliness (e.g., infestation status) and/or state of their computers" may be provided. *Id.* at 14:11-12. The *second option* recited after the phrase "at least one of" is an attestation that the TCB has ascertained the presence of a patch or patch level associated with a software component on the first host. This second option also is supported by the specification, which provides that "[i]n some embodiments, an operating system may respond with information associated with its patch level, wherein a sufficiently recent patch level may be interpreted as an assertion of cleanliness." *Id.* at 14:19-22. The two options are presented as *alternatives*: In the first alternative, general information about the infestation status (cleanliness) of the host computer is provided while, in the second alternative, specific information about the presence or absence of a patch associated with the host computer's software is provided, with that information acting as a surrogate for a general attestation about infestation status. In this way, the claims present binary alternatives, and the phrase "at least one of . . . and . . ." should be read in the disjunctive, to give meaning to its plain claim language, as explained by the patents' specification.

Google cites the Federal Circuit's *SIMO* and *SuperGuide* opinions in support of its proposed conjunctive interpretation of "at least one of . . . and . . . ." *See, e.g.*, Google Br. at 11. Those cases are readily distinguishable and inapplicable here. The Federal Circuit in *SuperGuide*

observed that, under the facts and language of the claim there under consideration, the phrase "at least one of" meant "one or more" and modified *four categories of items*, each of which was "further comprised of *many possible values*." *SuperGuide Corp. v. DirecTV Enter., Inc*., 358 F.3d 870, 886 (Fed. Cir. 2004) (emphasis added). That claiming situation is not present here. Rather, the phrase "at least one of . . . and . . ." in this case modifies only two distinct *alternatives*, not numerous *categories* comprised of many possible values.

*SuperGuide* simply does not set forth a rule that "at least one of . . . and . . ." must be construed as conjunctive, so it is not surprising that courts regularly distinguish *SuperGuide* when faced with binary claim language like that presented in this case. As the Eastern District of Texas Court observed, "*SuperGuide* is *context specific*, and other courts have found it *inapplicable* when the facts so require." *Firtiva Corp. v. Funimation Glob. Grp., LLC*, No. 2:21-cv-00111-JRG-RSP, 2022 WL 23165, at *7 (E.D. Tex. Jan. 3, 2022) (emphases added) (citing various opinions and "reject[ing] *SuperGuide*'s applicability to these facts").

The Court of Federal Claims has distinguished *SuperGuide,* finding "at least one of . . . and . . ." to be disjunctive. *See 3rd Eye Surveillance, LLC v. United States*, No. 15-501C, 140 Fed. Cl. 39, 69 (2018). In doing so, the court emphasized that "the context here is not a list [as in *SuperGuide*], but rather an option of two" and that the "duality of the term makes it a binary choice between two options—not a list giving rise to the confusion present in *SuperGuide*." *Id*.; *see also Iridescent Networks, Inc. v. AT&T Mobility, LLC*, No. 6:16-CV-01003, 2017 WL 10185852, at *3-4 (E.D. Tex. Dec. 12, 2017) (construing "at least one of . . . and . . ." as disjunctive and finding *SuperGuide* inapplicable under the facts and claim language at issue); *Shotkam LLC v. Tachyon, Inc*., No. H-20-1070, 2021 WL 23311, at *5-10 (S.D. Tex. Jan. 4, 2021).

In *MicroPairing v. Toyota Motor Mfg. Texas Inc.*, this Court similarly adopted a *disjunctive* reading of "at least one of . . . and . . ." in distinguishing *SuperGuide*, noting that "the claim at

issue in *SuperGuide* listed criteria consisting of four categories, where each category was further comprised of many possible values" from which a user must choose. No. SA-21-cv-00940-XR, 2022 WL 62540, at *19 (W.D. Tex. Jan. 5, 2022). The *MicroPairing* court observed that "in some instances, deviation from the Federal Circuit's construction of the term "at least one of . . . and . . ." as articulated in *SuperGuide* is warranted" and further observed that courts "have found *SuperGuide* inapplicable when the listed items following 'at least one of' are not categories containing many possible values." *Id.* (quoting *Apple, Inc. v. Evolved Wireless LLC*, Case IPR2016-01177, 2017 WL 6543970, at *4 (P.T.A.B. Dec. 20, 2017)). The *MicroPairing* Court concluded that the phrase "at least one of . . . and . . ." should be read as *disjunctive* because "the term appears in claim language reciting an *option of two rather than a list*" and because "a person of ordinary skill in the relevant art at the time of the invention would have understood that *the patentee used the term to indicate alternatives*." 2022 WL 62540, at *20 (emphasis added).

Google contends that "Judge Gilliland's decision in *MicroPairing Techs. v. Gen. Motors* fully accords with [Google's] construction." Google Br. at 12. In making this contention, though, Google ignores the Court's conclusion that "the term 'at least one of . . . and . . ." is conjunctive *except where it is strictly used disjunctively to describe a list of only a binary choice of two options.*" *MicroPairing Techs. LLC v. General Motors LLC*, No. 6:21-cv-00761-ADA, 2022 WL 2442167, at *16 (W.D. Tex. July 5, 2022) (emphasis added). In this case, the term "at least one of . . . and . . ." describes a list of only two options or alternatives and therefore is used disjunctively, contrary to Google's contention. Judge Gilliland's decision in *MicroPairing Techs. v. Gen. Motors* supports K.Mizra's position, not Google's.

This disputed claim limitation should be given its plain-and-ordinary *disjunctive* meaning, consistent with the claim language at issue and the authority distinguishing the here inapplicable *SuperGuide* decision.

### E.    Term 5: "quarantine" or "quarantining" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
| --- | --- |
| plain and ordinary meaning | isolating from the protected network |

Google seeks to replace the claim term "quarantining" with the term "isolating." Not only are such word games inconsistent with intrinsic evidence, they constitute a transparent violation of the fundamental tenet of claim construction that neither a defendant nor a court may rewrite or redraft claims. *See Chef Am., Inc. v. Lamb-Weston, Inc*., 358 F.3d 1371, 1374 (Fed. Cir. 2004) (courts may not redraft claims); *Lodsys,* 2013 WL 2949959, at *25 ("[I]t is not the province of the Court, during claim construction, to re-write the claims."); *K-2 Corp.*, 191 F.3d at 1364 ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."). The terms "quarantining" and "isolating" are not used synonymously or interchangeably in the asserted patents. The Court should thus give primacy to the chosen term.

Google contends that the specification requires "quarantine" be interpreted to mean "isolate." *See* Google Br. at 14. The specification does no such thing. In the context of the asserted patents, a *quarantined* computer is *not isolated*, and the intrinsic evidence indicates that "quarantining" and "isolating" are not interchangeable or synonymous. The claims and specifications unambiguously teach that a quarantined host computer must be able to communicate with other components of the claimed system, for example to access remediation services. If the host computer was truly "isolated," it could not do so, and a significant purpose of the claimed invention would be stymied.

Indeed, the specification provides that a "quarantined computer is *provided access to remediation services* (1003)." '705 Patent, 11:39-40 (emphasis added) (referring to Figs. 14 and 15). If a quarantined computer was truly "isolated," it would not have access to *any* services, including remediation services. The specification also states that "access to remediation includes or may include *allowing connections to servers* providing security patches or advisories . . . ." *Id*.

11

at 11:41-43 (emphasis added). If a quarantined computer was "isolated" from the rest of the system, it would not allow connections to servers or any other system components. Even Google implicitly concedes that a quarantined computer is not "isolated" from the system or other computers, writing that "[t]he specification indicates that the 'quarantined host' is isolated or quarantined from the protected network *except for accessing a remediation server*." Google Br. at 14 (emphasis added). A computer that has access to other system resources, including remediation resources, cannot properly be considered an "isolated" computer.

To support its position, Google relies heavily on *extrinsic* evidence, including two *non-technical* dictionary definitions, a published U.S. patent, and a 2004 article about "Securing Nomads." *See* Google Br. at 15. But as this Court has observed, extrinsic evidence is less significant than intrinsic evidence for purposes of claim construction, and dictionary definitions may be "too broad or not indicative of how the term is used in the patent." *SitePro, Inc. v. Waterbridge Res. LLC*, No. 6:23-cv-115-ADA-DTG, 2024 WL 760923, at *3 (W.D. Tex. Feb. 23, 2024). Such is the case here. Google's extrinsic evidence is not consistent with or indicative of how the term "quarantine" is used in the asserted patents. As noted above, it is uncontested that in the context of the asserted patents and claims, a quarantined computer has access to other network resources, including remediation resources. Google's extrinsic evidence does not capture or recognize that critical and indisputable fact.

Finally, the terms "quarantine" and "quarantining" are not subject to either of the two exceptions to the heavy presumption that the terms should be given their plain-and-ordinary meanings, and Google does not argue otherwise. Because "[t]he patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its scope," the terms—such as "quarantine" and

"quarantining" here—should be given their plain-and-ordinary meanings. *Thorner*, 669 F.3d at 1367; *SitePro*, 2024 WL 760923, at *3.

### F.    Term 6: "quarantine server" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | server to which a quarantined host's network traffic is redirected |

Once again, Google improperly seeks to rewrite the claim by reading embodiments from the specification into the claim language. Google's proposed construction does not capture the fact that a "quarantined host's network traffic" (a broad phrase seemingly coined by Google) may further flow to another host or server for purposes of remediation. Nothing in the specification of the asserted patents states that the entirety of a "quarantined host's network traffic" is redirected to *and stops at* a server such as the quarantine server. Google's proposed construction is thus inconsistent with the claim language and specification and will do nothing but confuse the jury.

The term "quarantine server" is used throughout the specification (including the figures) and would be understood by a POSITA and jury to be a computer that allows an infected host to be quarantined and, later, remediated. *See, e.g.*, '705 Patent, 11:39-40 (noting that "the quarantined computer is provided access to remediation services (1003)") (referring to Figs. 14 and 15). The specification and figures also importantly indicate that not all network traffic for a quarantined host computer is "redirected" to the quarantine server. For example, the specification discloses that "a quarantined host is permitted to access the protected network only as required to remedy a condition that caused the quarantine to be imposed . . . ." *Id*. at 3:14-16. This passage logically and textually shows that not all network traffic flowing to a quarantined host computer is redirected to a quarantine server. For instance, some "traffic" may also be directed to the remediation host. In short, the patents teach a POSITA that a quarantined host's "traffic" may flow to and access the protected network for purposes of remediation and need not always stop at the quarantine server.

Consistent with this teaching, Figure 10B from both patents depicts how network traffic can flow from a plurality of possibly quarantined host computers (Host 1020, Host 1022, etc.) to a router 1026, then to a gateway 1028, and eventually to a quarantine server 1034. *See Id.*at Fig. 10B.

The term "quarantine server" also is not subject to either of the two exceptions to the heavy presumption that the term should be given its plain-and-ordinary meaning and again, Google does not allege otherwise. As a result, there is a strong presumption that this term should be given its plain-and-ordinary meaning.

### G.    Term 7: "a remediation host configured to provide data usable to remedy the insecure condition" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | Subject to 35 U.S.C. § 112(f). <br> <u>Function</u>: "provide data usable to remedy the insecure condition" <br> <u>Structure</u>: Indefinite |

The Court must start with the presumption that this term is *not* drafted in means-plus-function format because it does not use the term "means." *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022). That presumption may only be overcome if Google "demonstrates that the claim term fails to recite sufficiently definite structure" to one skilled in the art at the time of the invention. *Id.* Google has not made and cannot make that showing.

The essential inquiry is "whether the claims are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* Claim terms may describe either a single structure or a "class of structures." *Id.* at 1366. And there is no specific way in which the structure must be recited; it may be done in "various ways." *Id.*

The Court need look no further than the term "host" to reject the application of § 112, ¶ 6. Google acknowledges that "host" was a well-known term in the art. (Google Br. at 18 (providing dictionary definitions).) Even accepting Google's definition of "host" as "computer" resolves the

issue.[3] *Mad Dogg Ath., Inc. v. Peloton Interactive, Inc.*, No. 2:20-cv-00382-JRG, 2021 WL 3200994, at *15 (E.D. Tex. July 28, 2021) (noting that computer "refers to a class of structures" in rejecting application of § 112, ¶ 6 to "computer configured to" terms); *see also SkyHawke Techs., LLC v. DECA Int'l Corp.*, CV 18-1234-GW(PLAx), 2019 U.S. Dist. LEXIS 220590, at *51-52 (C.D. Cal. Dec. 23, 2019) (rejecting argument that a claim reciting "a computer configured to" would invoke § 112, ¶ 6 because "[a] computer [] connotes a known class of structures such that the inquiry would end"). Indeed, the Federal Circuit has recognized that even vague terms like "end device" or "central piece of equipment," connote sufficient structure to end this inquiry. *Chrimar Holding Co., LLC v. ALE USA Inc.*, 732 F. App'x 876, 885 (Fed. Cir. 2018) ("A claim term that has an understood meaning in the art as reciting structure is not a nonce word triggering § 112, ¶ 6."). As if that was not enough, and it is, Google further concedes "host" connotes sufficient structure by including the term in proposed constructions for "trusted computing base" and "quarantine server." *Sonrai Memory Ltd. v. Oracle Corp.*, No. 1:22-cv-94-LY, 2022 WL 800730, at *9 (W.D. Tex. Mar. 16, 2022) (finding use of term in other constructions indicates the term "has a sufficiently understood structural meaning to a POSITA").[4]

The intrinsic evidence confirms that "host" is not a functional placeholder. The claims treat "host" as structure by, for example, reciting a "trusted computing base associated with a trusted platform module *within* the first host." '705 Patent, Claim 12 (emphasis added); *see also* Declaration of Dr. Eric Cole ("Cole Decl.") ¶¶ 29-32. It makes no sense to say that the trusted platform module is located within a functional placeholder; structure is required. *Accord. Phillips*, 415 F.3d at 1311 ("The claim characterizes the baffles as 'extending inwardly' from the steel shell

---

[3] The presence of a functional element in the definition also cannot carry Google's burden. *See Dyfan*, 28 F.4th at 1366 (finding circuit connotes structure where definition explains that it "fulfill[s] some desired function").

[4] Google likewise uses the term "host" throughout its Brief without any confusion about the term's meaning.

walls, which plainly implies that the baffles are structures."). The specification likewise treats "host" as structure by, for example, illustrating hosts as structural components within the networked environment. '705 Patent, Fig. 10B (host 1 through host m); *see also* Cole Decl. ¶¶ 33-34. In cases where, as here, "it is clear that a claim term itself connotes some structure to a person of ordinary skill in the art, the presumption that 112, ¶ 6 does not apply is determinative in the absence of more compelling evidence of the understanding of one of ordinary skill in the art." *Dyfan*, 28 F.4th at 1366.[5] Google has offered no such evidence, compelling or otherwise. To the contrary, Google has ignored significant evidence about the term "remediation host" in its rush to impose § 112, ¶ 6.

First, Google ignores the context provided for "remediation host" in the claims themselves. For example, claim 12 of the '705 Patent recites a "processor" that is configured to, among other things, "permit the first host to communicate with the remediation host." '705 Patent, 21:35-37. Accordingly, a person skilled in the art would understand that the remediation host is communicably connected to the first host. Cole Decl. ¶¶ 38-41. And claim 12 also recites that the remediation host is configured to "provide data usable to remedy the insecure condition." '705 Patent, 21:32-35. A person skilled in the art would therefore understand that the remediation host sends this data to hosts in need of remediation. Cole Decl. ¶¶ 42. In other words, the claims themselves describe the remediation host's connections and outputs in the context of the claims, which in and of itself demonstrates that "remediation host" connotes structure to a POSITA. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1299 (Fed. Cir. 2014) ("Structure may [] be provided by

---

[5] This is true even where the recognized structural term is only part of the claim term under examination. For example, *Dyfan* supports this legal construct with positive reference to *Apex Inc. v. Raritan Comput., Inc.*, 325 F.3d 1364 (Fed. Cir. 2003), where the term "circuit" was deemed to connote structure. *Dyfan*, 28 F.4th at 1370. But *Apex* was addressing whether terms such as "on-screen programming circuit" and "programmed logic circuit" invoked § 112, ¶ 6, not the standalone term "circuit." *Apex*, 325 F.3d at 1370.

describing the claim limitation's operation, such as its input, output, or connections"); *see also Sonrai Memory*, 2022 WL 800730, at *8-9.

Second, Google ignores the specification's disclosure concerning the claimed "remediation host." Most importantly, the specification refers to "a host other than the remediation server 1032," '705 Patent, 12:8-9, which necessarily implies that the remediation server is a host (and hence a remediation host).[6] Courts have widely acknowledged that the term "server" connotes structure. *See, e.g., Sound View Innovations, LLC v. Facebook, Inc.*, No. 16-cv-116 (RGA), 2017 WL 2221177, at *10-11 (D. Del. May 19, 2017) ("'Server' has a well-known meaning to a person of ordinary skill in the art and connotes a definite structure."); *Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. CV 14-08256 DDP (VBKx), 2016 WL 344461, at *7 (C.D. Cal. Jan. 27, 2016) ("A 'server' is also a well-known structural term."). Indeed, the patents indicate that "remediation server 1032" is a structural component of the networked environment rather than a functional black box. '705 Patent, Fig. 10B;[7] *see also* Cole Decl. ¶¶ 33-34, 42. These disclosures also contradict Google's efforts to overcome the presumption that "remediation host" is a "means" placeholder. *Accord. Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1358-59 (Fed. Cir. 2011) (relying on written description to support conclusion that claim term was not a purely functional limitation). In fact, a POSITA would recognize that the terms "remediation host" and "remediation server" are interchangeable in the context of these patents. Cole Decl. ¶¶ 42-43.

---

[6] Google's dictionaries define "host" as a server (Doc. No. 42-18 ("a server computer . . .")), although Google curiously omits this first line of the definition in its argument (Google Br. at 18.)
[7] Google's refusal to address the remediation server shown in Fig. 10B is puzzling—or perhaps revealing—given its widespread reliance on Fig. 10B in its Brief. Google Br. at 1 ("Figure[] 10B . . . show[s] the network environment where infected hosts are quarantined . . ."); *Id*. at 2 (reproducing Fig. 10B); *Id*. at 3 (relying on Fig. 10B in discussing "protected network"); *Id*. at 17 (relying on Fig. 10B to distinguish quarantine server and remediation server). It is particularly puzzling given Google specifically relies on the "remediation server" and describes it as providing claimed functionality. *Id.* at 16 ("A 'remediation server' is where the quarantined host may be able to 'download a patch, more current threat definition, etc.'").

Third, Google ignores the examples of existing systems in the specification. The '705 Patent indicates that "access to remediation includes allowing direct access to vendor sites *known* to provide remediation assistance, such as to Microsoft's Window Update service, where security patches may be obtained." '705 Patent, 11:47-50 (emphasis added). The '705 Patent also mentions "contact with an appropriate anti-contagion software distributor" (*Id.*. at 14:55-56), as well as identifying known anti-contagion software distributors (*Id.* at 14:36-45.) In other words, a POSITA would know simply by reading the patents' specification that the term "remediation host" refers to classes of conventional systems known in the art. Cole Decl. ¶¶ 53-59. This too sufficiently describes structure for the claimed remediation host. *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018).

Notably, Google provides no testimony from a person skilled in the art to support its attorney argument about how the skilled artisan would understand "remediation host." The testimony offered by K.Mizra from its expert Dr. Cole explaining the many ways in which a person skilled in the art would understand "remediation host" to refer to definite structure (Cole Decl. ¶¶ 27-61) thus stands unrebutted, meaning Google cannot be found to have met its burden to overcome the presumption against application of § 112, ¶ 6 and its indefiniteness argument fails. *Dyfan*, 28 F.4th at 1368 ("Dr. Goldberg's unrebutted testimony demonstrates that the 'code' 'application' limitations here connote a class of structures to a person of ordinary skill.").

Next, Google does not contend that the term "remediation host" requires construction if § 112, ¶ 6 does not apply. That is not surprising, as a POSITA would readily understand the meaning of this term based on the claims and specification. Accordingly, "remediation host" should receive its plain and ordinary meaning and that should be the end of the inquiry.

However, assuming for the sake of argument that Google had proved that "remediation host" was a placeholder for "means," the next step in the indefiniteness inquiry would be to review

the patents' specification to see what structure, if any, was disclosed to perform the claimed function. *Triton Tech. of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014). The parties agree on the claimed function: providing data usable to remedy the insecure condition. The structure disclosed in the patents' specification for performing that function is a remediation server, which is specifically described as performing and being linked to the recited function at least at 11:40-50, 12:5-7, 14:53-59, 15:22-32, 15:48-49, 16:5-7, and 16:19-23 of the '705 Patent. Cole Decl. ¶¶ 42-52. In short, Google cannot prove, as it must, indefiniteness due to lack of corresponding structure by clear and convincing evidence. *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001).

## IV.    CONCLUSION

K.Mizra respectfully requests that this Court adopt K.Mizra's proposed constructions.

Dated: September 16, 2025

Respectfully submitted,

By: /s/ Bart A. Starr
    Michael C. Smith
    Texas Bar No. 18650410
    michael.smith@solidcounsel.com
    Scheef & Stone, LLP
    113 E. Austin Street
    Marshall, TX 75670
    (903) 938-8900

    Robert R. Brunelli (Admitted *pro hac vice*)
    CO State Bar No. 20070
        rbrunelli@sheridanross.com
    Bart A. Starr (Admitted *pro hac vice*)
    CO State Bar No. 50446
        bstarr@sheridanross.com
    Brian S. Boerman (Admitted *pro hac vice*)
    CO State Bar No. 50834
        bboerman@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, CO 80202
    Telephone: 303-863-9700
    Facsimile: 303-863-0223
    litigation@sheridanross.com

*Of Counsel:*
Claire A. Henry
Texas Bar No. 24053063
Miller Fair Henry PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
claire@millerfairhenry.com

*Attorneys for Plaintiff K.Mizra LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on September 16, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Lori R. Brown
Lori R. Brown
lbrown@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223