**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **K.MIZRA LLC,** | § | |
| *Plaintiff*, | § | |
| | § | Case No. 1:25-cv-00236-ADA |
| v. | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |
| | § | |

<u>**GOOGLE'S REPLY IN SUPPORT OF ITS OPENING CLAIM CONSTRUCTION
BRIEF (DKT. 42)**</u>

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................... 1

     A.     Term 1: "protected network" (all asserted claims) .................................... 1

     B.     Term 2: "trusted computing base" (all asserted claims) ............................ 2

     C.     Term 3: "valid digitally signed attestation of cleanliness" (all asserted claims) ..................................................................................... 4

     D.     Term 4: "includes at least one of an . . . and an . . ." ('705 Patent, all asserted claims) .................................................................................. 4

     E.     Term 5: "quarantine" or "quarantining" (all asserted claims) .................. 6

     F.     Term 6: "quarantine server" (all asserted claims) ..................................... 7

     G.     Term 7: "a remediation host configured to provide data usable to remedy the insecure condition" (all asserted claims) ............................... 8

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adv. Ground Info. Sys., Inc. v. Life360, Inc.*,
   830 F.3d 1341 (Fed. Cir. 2016)............................................................................8

*Bosch, LLC v. Snap-On Inc.*,
   769 F.3d 1094 (Fed. Cir. 2014)........................................................................9, 10

*Cirba Inc. v. VMware, Inc.*,
   2022 WL 608185 (D. Del. 2022)..........................................................................6

*Int'l Rectifier Corp. v. IXYS Corp.*,
   361 F.3d 1363 (Fed. Cir. 2004)...........................................................................10

*Medgraph, Inc. v. Medtronic, Inc.*,
   843 F.3d 942 (Fed. Cir. 2016).............................................................................5

*Micropairing Techs. LLC v. Gen. Motors LLC*,
   2022 WL 2442167 (W.D. Tex. 2022)....................................................................5

*Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*,
   515 F.3d 1331 (Fed. Cir. 2008)...........................................................................9

*O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)........................................................................7, 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)....................................................................1, 3, 6

*Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.*,
   24 F.4th 1406 (Fed. Cir. 2022) ............................................................................3

*Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*,
   989 F.3d 1002 (Fed. Cir. 2021)...........................................................................10

*Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC*,
   824 F.3d 999 (Fed. Cir. 2016).............................................................................6

*SIMO Holdings Inc. v. Hong Kong Network Tech*,
   983 F.3d 1367 (Fed. Cir. 2021).......................................................................5, 6

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Sisvel Intl. S.A. v. Sierra Wireless*,
    82 F.4th 1355 (Fed. Cir. 2023) ............................................................................10

*SpeedTrack, Inc. v. Amazon.com*,
    998 F.3d 1373 (Fed. Cir. 2021)..............................................................................4

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
    358 F.3d 870 (Fed. Cir. 2004)..........................................................................5, 6

*Trs. of Columbia Univ. in City of New York v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016)...............................................................................1

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)...........................................................................1, 2

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015).........................................................................8, 9

**STATUTES**

35 U.S.C. § 112.................................................................................................8, 9, 10

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|:---:|:---:|
| A | Deposition Transcript of Dr. Eric Cole, dated October 3, 2025 |

**PRIOR EXHIBITS**

The following exhibits are attached to Google's Opening Claim Construction Brief, dated August 26, 2025 (Dkt. 42), and are listed here for convenience.

| Exhibit No. | Description |
|:---:|:---:|
| 1<br><br>(Dkt. 42-1) | Barbara Fraser et al., *RFC 2196, Site Security Handbook*, RFC Editor (Sept. 1997), *available at* https://www.rfceditor.org/info/rfc2196 |
| 2<br><br>(Dkt. 42-2) | *RFC Errata: RFC 2196, Site Security Handbook*, September 1997, RFC Editor, *available at* https://www.rfceditor.org/errata/eid482.RFC 2196 |
| 3<br><br>(Dkt. 42-3) | U.S. Gen. Accounting Office, GAO-04-467, *Information Security: Technologies to Secure Federal Systems* (Mar. 2004), *available at* https://www.gao.gov/products/gao-04-467 |
| 4<br><br>(Dkt. 42-4) | U.S. Patent No. 6,345,299 (filed Nov. 26, 1997) (issued Feb. 5, 2002) |
| 5<br><br>(Dkt. 42-5) | Pl.'s K.Mizra's Op. Cl. Constr. Br., *K.Mizra LLC v. HPE*, No. 2:21-cv-305, Dkt. 117 (E.D. Texas) |
| 6<br><br>(Dkt. 42-6) | File History for U.S. Patent 8,234,705 (KMIZ-GOOGLE_000058-000513) |
| 7<br><br>(Dkt. 42-7) | U.S. Patent Application No. 2005/0033987 A1 (filed Aug. 8, 2003) (published Feb. 10, 2005) |
| 8<br><br>(Dkt. 42-8) | Martin Abadi & Ted Wobber, *A Logical Account of NGSCB, in Proceedings of Formal Techniques for Networked and Distributed Systems (Forte '04)*, Springer-Verlag (Sept. 2004), *available at* https://www.microsoft.com/enus/research/publication/a-logicalaccount-of-ngscb/ ("Abadi") |

| Exhibit No. | Description |
|---|---|
| **9**<br><br>(Dkt. 42-9) | Claim Construction Order, *K.Mizra LLC v. HPE*, No. 2:21-cv-305, Dkt. 132 (E.D. Tex. Nov. 21, 2023) |
| **10**<br><br>(Dkt. 42-10) | Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) |
| **11**<br><br>(Dkt. 42-11) | William Strunk, Jr. & E.B. White, *The Elements of Style* (4th ed. 2000) |
| **12**<br><br>(Dkt. 42-12) | *Quarantine*, Webster's Third New International Dictionary, Merriam-Webster Inc., at 1859 (2002) |
| **13**<br><br>(Dkt. 42-13) | *Quarantine*, Random House Webster's Unabridged Dictionary, Random House, at 1579 (2nd ed. 2001) |
| **14**<br><br>(Dkt. 42-14) | U.S. Patent Application No. 2002/0199116 A1 (filed June 25, 2001) (published Dec. 26, 2002) |
| **15**<br><br>(Dkt. 42-15) | Kevin Eustice et al., *Securing Nomads: The Case for Quarantine, Examination, and Decontamination, in NSPW '03: Proceedings of the 2003 Workshop on New Security Paradigms* (2004) ("Eustice") |
| **16**<br><br>(Dkt. 42-16) | Declaration of Sachin M. Patel and Appendices, dated August 26, 2025 |
| **17**<br><br>(Dkt. 42-17) | *Host*, Comprehensive Dictionary of Electrical Engineering, at 312 (1999) |
| **18**<br><br>(Dkt. 42-18) | *Host*, Microsoft Computer Dictionary, at 256 (5th ed. 2002) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| K.Mizra | Plaintiff K.Mizra LLC |
| Google | Defendant Google LLC |
| '705 Patent | U.S. Patent No. 8,234,705 |
| '048 Patent | U.S. Patent No. 9,516,048 |
| asserted patents | The '705 and '048 Patents |
| asserted claims | Claims 12, 13, 16, and 19 of the '705 Patent and claims 10, 11, 14, 17, and 18 of the '048 Patent |
| K.Mizra-HPE matter | *K.Mizra LLC v. HPE*, No. 2:21-cv-305 (E.D. Texas) |
| skilled artisan or POSITA | Person of ordinary skill in the art |
| TCB | trusted computing base |
| GBr. | Google's Opening Claim Construction Brief, dated 08-26-2025 (Dkt. 42) |
| KBr. | K.Mizra's Opening Claim Construction Brief, dated 09-16-2025 (Dkt. 43) |

*\* Emphasis added unless otherwise indicated.*

*\*\* Internal citations and quotations omitted unless otherwise indicated.*

*\*\*\* Citations to one specification refer to both specifications except where otherwise indicated.*

**ARGUMENT**

**A. Term 1: "protected network" (all asserted claims)**

| Google's Construction | K.Mizra's Construction |
|---|---|
| private network, distinct from public networks like the Internet | Plain and ordinary meaning |

*The Specification Defines A "Protected Network" By Implication.* K.Mizra claims "lexicography requires a statement in the form 'I define _____ to mean _____,' but such rigid formalism is not required." *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) (cleaned up). Where, as here, the "specification acts as a dictionary … when it defines terms by implication," it "is dispositive" and "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). K.Mizra's plain and ordinary meaning construction ignores the problem the asserted patents purport to solve. Contrary to K.Mizra's contention (KBr.2-4), the specification supports Google's construction where it defines a "protected network" by implication as distinct from public networks. The specification's "Background Of The Invention" section addresses the "need for a reliable way to ensure that a system does not infect or otherwise harm other network resources ***when connected to a protected network***," '705 Patent, 1:38-41, upon "reconnect[ing] … to one or more networks and/or systems that are ***not part of the ... protected network***," *id.*, 17-19, "[b]y roaming to unknown ***domains, such as the Internet,*** and/or connecting to ***such domains through public***" nodes, *id.*, 20-22. By implication, the "protected network" must be a "private network, distinct from public networks like the Internet," allowing for limited access. *Id.*, Abstract ("If the host is required to be ***quarantined***, the host is provided ***only limited access to the protected network***.").

And although the specification is dispositive here, the Court is also "authorized" to rely on extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). To that end, Google's extrinsic evidence distinguishes public and protected networks, confirming that public

networks like the Internet cannot be "protected networks." *See* GBr.4. For example, U.S. Patent No. 6,345,299 distinguishes a "***private protected network*** 16" from an "***unprotected public network*** 14 (e.g., ***the Internet***)." *Id.* (quoting Ex. 4 at 1:37-39).

**B.    Term 2: "trusted computing base" (all asserted claims)**

| Google's Construction | K.Mizra's Construction |
|---|---|
| hardware or software within the first host that provides security to the host | hardware or software that has been designed to be a part of the mechanism that provides security to a computer system |

*The Meaning Of Trusted Computing Base Is Compelled By The Intrinsic Record.*

K.Mizra insists that the "claim language requires only that the trusted computing base be '***associated with***' a trusted platform module," KBr.4 (emphasis in original) (citing '705 Patent, claim 19), but ignores, *see id.* at 4-5, that the claim language "associated with a trusted platform module" modifies "a trusted computing base," and in turn, that the claim language "within the first host" further modifies the whole ("a trusted computing base associated with a trusted platform module"), not the part ("a trusted platform module"), *see* GBr.5. Without support, K.Mizra also claims "[i]f the patentees had intended the trusted computing base to be ***within*** the first host, they could easily have claimed 'a trusted computing base within the first host and associated with a trusted platform module within the first host.'"[1] KBr.4 (emphasis in original). But here, the applicant's "express representations" reveal the intent to limit "the scope of the claims," *Vitronics*, 90 F.3d at 1582, by disclosing that "a trusted platform module" is part of and modifies "a trusted computing base associated with a trusted platform module," *see* Ex. 6 at 248 ("Liang does not anticipate ***a trusted platform module***, nor a ***trusted computing base associated with a trusted platform module***."), and acquiescing to the examiner's same understanding, *see* GBr.7-9.

---

[1]    K.Mizra previously indicated that the accused TCB is on the first host. *See* Dkt. 34 at 6 ("[T]he CEP Web App … can communicate with a Trusted Device, i.e. a 'first host,' that uses a TPM and thus a TCB. That request from CEP to the TCB located within the 'first host' ….").

K.Mizra insists that "the prosecution history compels the interpretation that the TCB's hardware/software provides security *to the entire computer system*, ... as Judge Gilstrap found," KBr.5 (emphasis in original), but Judge Gilstrap made no findings and simply adopted the parties' agreed-upon construction for TCB, Ex. 9 at 6, 8, 11. Avoiding the applicant's express representations and the examiner's understanding, *see* GBr.7-9, K.Mizra relies exclusively on a single sentence: "A given piece of hardware or software is a ***part of the TCB*** if and only if it has been designed to be a ***part of the mechanism that provides its security*** to the computer system," KBr.5 (quoting Ex. 6 at 248); GBr.7 (same). In context, this sentence describes how a piece of hardware or software is a part (e.g., trusted platform module) of the mechanism (i.e., TCB) that provides its security to the computer system. The TCB protects "the computer system," consistent with Google's construction and the specification which discloses the "trusted computing base within a computer" where the computer is the "first host." For example:

- "***A computer*** ... is queried for a cleanliness assertion (1302), for example by contacting ***a trusted computing base within a computer***, and requesting an authenticated infestation scan by trusted software," '705 Patent, 13:64-14:1;
- "An example of ***a trusted computing base within a computer*** is the Paladium security initiative," *id.*, 14:2-3;
- "***Trusted code bases*** may for example execute antivirus scans of the ***remainder of the computer***," *id.*, 14:7-9; and
- "[***T***]***rusted code bases*** may digitally sign assertions about the cleanliness (e.g. infestation status) and/or ***state of their computers***," *id.* at 14:10-12.

There is no disclosure in the specification describing the "trusted computing base" as outside of the "first host" or how such a configuration would operate. Because the specification "is the single best guide to the meaning of a disputed term," *Phillips*, 415 F.3d at 1315, and K.Mizra's "broader construction" of a "trusted computing base" unmoored from the "first host" is inconsistent with the specification," *Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.*, 24 F.4th 1406, 1416 (Fed. Cir. 2022), the Court should adopt Google's construction on this additional basis.

K.Mizra's extrinsic evidence (KBr.5), is foreclosed by the specification and prosecution history here which "inform[s] the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1377 (Fed. Cir. 2021). K.Mizra is constrained by the applicant's understanding of the invention and by the applicant's express representations: "within the first host," there is "a trusted computing base associated with a trusted platform module."

### C.   Term 3: "valid digitally signed attestation of cleanliness" (all asserted claims)

| Google's Construction | K.Mizra's Construction |
|---|---|
| Plain and ordinary meaning, wherein the plain and ordinary meaning is that the "attestation of cleanliness" is digitally signed by and received from the "trusted computing base" | Plain and ordinary meaning |

*The Term "Valid Digitally Signed Attestation Of Cleanliness" Requires Clarification In Light Of Prior Litigation And The Intrinsic Evidence.* Google explained that its construction is a natural extension of Judge Gilstrap's construction, supported by the intrinsic evidence, and would assist the jury's understanding of the claim language. GBr.10-11. K.Mizra's response misrepresents Judge Gilstrap's order and ignores express plain claim language.

Judge Gilstrap construed the term "attestation of cleanliness"—not the full disputed term here. In the disputed term, "valid digitally signed" modifies "attestation of cleanliness." The specification supports the express claim language, acknowledging that "trusted code bases may digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers." *Id.*, 14:10-12.

### D.   Term 4: "includes at least one of an . . . and an . . ." ('705 Patent, all asserted claims)

| Google's Construction | K.Mizra's Construction |
|---|---|
| includes at least one of an . . . and at least one of an . . . | Plain and ordinary meaning |

4

*The Claim Language, Specification, And Federal Circuit Precedent Mandate The Conjunctive.* K.Mizra contends that this term "should be read in the *disjunctive* as requiring *either* of two options or alternatives…." KBr.7-8 (emphases in original) (citing '705 Patent, 22:26-31). Rather, the term is conjunctive, requiring two types of attestations for the claimed "valid digitally signed attestation of cleanliness," where "the trusted computing base has ascertained": (1) "the first host is not infested" and (2) "the presence of a patch or a patch level associated with a software component on the first host," '705 Patent, claim 12; *see also* GBr.11-13.

K.Mizra misreads the specification and case law to compel a binary choice based on so-called "separate and distinct attestation options." KBr.8-10 (citing *Micropairing Techs. LLC v. Gen. Motors LLC*, 2022 WL 2442167, at *16 (W.D. Tex. 2022) (concluding that "the term 'at least one of ... and ...' is conjunctive except where it is strictly used disjunctively to describe a list of only a binary choice of two options")). Here, the two attestations "are not mutually exclusive" because the specification "teach[es] that the invention *may contain both*." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016) (concluding that "the district court correctly construed the limitation 'and' to mean 'and,' rather than 'or'"). Indeed, the specification illustrates that the "trusted code bases *may* digitally sign assertions about the cleanliness (e.g. infestation status) *and/or* state of their computers" (i.e., recency of patch level), '705 Patent, 14:11-12, and that "an operating system *may* respond with information associated with its patch level, wherein a sufficiently recent patch level may be interpreted as an assertion of cleanliness," *id.*, 14:19-22.

K.Mizra also asserts that "the Federal Circuit's *SIMO* and *SuperGuide* opinions ... are readily distinguishable" because the term here "modifies only two distinct alternatives, not numerous categories comprised of many possible values." KBr.8-9. But K.Mizra fails to engage with *SIMO* or the grammatical principles clarified within, and instead cites case law that either

predates or did not consider *SIMO*.  *See id.* at 9-10.  In contrast, the district court in *Cirba Inc. v. VMware, Inc.* applied *SIMO* and *SuperGuide*, found that "neither the claim language nor the specification rebuts the presumption that the patentee intended the plain and ordinary meaning of this language," and adopted the construction "at least one compatibility score and at least one of a number of transfers," for the claim language of "one or more criteria" comprising "at least one of a compatibility score, and a number of transfers."  2022 WL 608185, at *8-9 (D. Del. 2022) (Stark, J.) (cleaned up); *see also* GBr.12 (same).  The Court should follow the same steps here.

**E.    Term 5: "quarantine" or "quarantining" (all asserted claims)**

| Google's Construction | K.Mizra's Construction |
|---|---|
| isolating from the protected network | Plain and ordinary meaning |

***The Inventor's Lexicography In The Specification Governs And Is Consistent With Contemporaneous Art.***  Contending that "Google seeks to replace the claim term 'quarantining' with the term 'isolating,'" K.Mizra proffers no meaning to the term in the context of protected networks.  KBr.11.  Contrary to K.Mizra's contention, *see id.* at 12, the specification "reveal[s] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess[,]" so "the inventor's lexicography governs" here.  *Phillips*, 415 F.3d at 1316.

Because the intrinsic evidence "unambiguously teach[es] that a quarantined host" will need to be able "to access remediation services," K.Mizra asserts that "[i]f the host computer was truly 'isolated,' it could not do so, and a significant purpose of the claimed invention would be stymied."  KBr.11.  But Google recognized that "[t]he specification indicates that the 'quarantined host' is isolated or quarantined from the protected network ***except for accessing a remediation server***."  *Id.* at 12 (emphasis in original) (quoting GBr.14).  Here, the '705 and '048 Patents' titles, "Contagion Isolation and Inoculation" and "Contagion Isolation and Inoculation via Quarantine," respectively, "aid in claim construction."  *Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC*, 824 F.3d 999, 1003 n.2 (Fed. Cir. 2016).  Quarantining allows for both isolation ("the general

case") and inoculation ("the exception"); accessing remediation is permitted under the exception. Most importantly, the claims expressly include the exception, "permit the first host to communicate with the remediation host," to distinguish the general case, "quarantine the first host." '705 Patent, claim 12.

Finally, to the extent that the Court needs to consult extrinsic evidence, Google's contemporaneous extrinsic evidence is consistent with the inventor's lexicography, *see, e.g.*, Ex. 14 at [0015] ("[T]he present invention *isolates* virus-susceptible clients and virus-infected clients from a server of a network … to effectively place those clients in *quarantine*.").

### F.    Term 6: "quarantine server" (all asserted claims)

| Google's Construction | K.Mizra's Construction |
|---|---|
| server to which a quarantined host's network traffic is redirected | Plain and ordinary meaning |

***"Quarantine Server" Requires Construction To Assist the Jury.*** Google established that its proposed construction for "quarantine server" is consistent with the intrinsic evidence and would assist the jury to distinguish between different types of servers. GBr.16-17. While K.Mizra proposes "plain and ordinary meaning," it advances its own definition as a "computer that allows an infected host to be quarantined and, later, remediated" followed by further characterizations that "not all network traffic for a quarantined host computer is redirected to the quarantine server." KBr.13. But K.Mizra's argument that "not all network traffic for a quarantined host computer is redirected to the quarantine server" (KBr.13) is encompassed by other claim language comparing "web server requests" and a "DNS query." '705 Patent, claim 12. It is also not the "quarantine server," but rather the "processor" (claim 12) and the "computer program product" (claim 19) that "permit the first host to communicate with the remediation host." '705 Patent, claims 12, 19. This highlights that "the 'ordinary' meaning of [the] term does not resolve the parties' dispute, and claim construction requires the court to determine what claim scope is appropriate." *O2 Micro*

*Int'l Ltd. v. Beyond Innov. Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

### G.  Term 7: "a remediation host configured to provide data usable to remedy the insecure condition" (all asserted claims)

| Google's Proposed Construction | K.Mizra's Construction |
|---|---|
| Subject to 35 U.S.C. § 112(f). <br> <u>Function</u>: "provide data usable to remedy the insecure condition" <br> <u>Structure</u>: Indefinite | Plain and ordinary meaning |

Google's opening brief established that "remediation host" is subject to § 112, ¶ 6 because: (i) it is a nonce term that only exists in the asserted patents; and (ii) the intrinsic evidence does not supply sufficient structure for the term, instead using self-referential functional language.  GBr.17-20.  K.Mizra and its expert do not disturb Google's showings but rather reinforce that "remediation host" is a placeholder for anything that performs the recited function.

***The Claims Establish § 112, ¶ 6 Applies.***  Google showed that § 112, ¶ 6 applies (GBr.17-19) when, as here, the claim "fails to recite sufficiently definite structure," or "recites function without reciting sufficient structure for performing that function."  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348-51 (Fed. Cir. 2015).  K.Mizra asserts that "remediation host" connotes structure (KBr.14-16), but neither K.Mizra nor Dr. Cole point to any definition or usage of "remediation host" outside the asserted patents—nor can they because the term is only used in related patents.  GBr.18 (citing Ex. 16); Ex A at 10:20-11:12, 13:6-15:25, 54:14-22.  "[T]he combination of the terms [remediation and host] as used in the context of the relevant claim language suggests that it is simply an abstraction that describes the function being performed."  *Adv. Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1348 (Fed. Cir. 2016). Their reliance on dictionaries (KBr.14-15,18), including describing "host" as a "computer system" that "executes, supports, or facilitates certain processes or operations" (Dkt 43-11 ¶ 29)—reinforce Google's contention: "host" is anything that "perform[s] a certain computation or function" or "provides services," GBr.18 (citing Exs. 17 & 18); Ex A at 33:4-17.  These definitions and Dr.

Cole confirm that "host" "refers only to a general category of whatever may perform specified functions," *Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014), which is the "same black box recitation of structure for providing the same specified function as if the term 'means' had been used," *Williamson*, 792 F.3d at 1350.

K.Mizra and its expert then attempt to rewrite the claims saying structure is conveyed because "first host" is found elsewhere in the claims. KBr.15. This argument ignores the inventors' use of different language—including different words, such as "first" or "remediation" to modify "host"—throughout the claims. Ex. A at 19:11-20:12, 22:13-25:21. This is precisely the approach the Federal Circuit consistently rejects: "Had the patentee … intended something different, it could have prevented this result through clearer drafting." *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1337 (Fed. Cir. 2008). And, in any event, the claim term "first host" is modified by other claim language providing some structure, such as "software component" (or an "operating system") and a "trusted computing base associated with a trusted platform module within the first host." '705 Patent, claims 12, 16, 19.[2] Finally, K.Mizra and its expert's mention of the claim term "processor" in claim 12 (KBr.16) cannot provide structure because the "processor" only recites "permit[ting] the first host to communicate with the remediation host," not the structure of the remediation host itself. '705 Patent, claims 12, 19. Mere "high-level" "outputs", like "communication[]" does not connote sufficient structure to avoid § 112, ¶ 6. *Williamson*, 792 F.3d at 1351.

***The Specification Reinforces That The Term Is Means-Plus-Function And Fails To Disclose Corresponding Structure***. As Google demonstrated, the specification provides no

---

[2]    Contrary to K.Mizra's allegations, Google does not concede structure through the use of "host" in other constructions. KBr.15 & n.4. Google's constructions of TCB and "quarantine server" refer to functional descriptions relating to the "first host," GBr.4, 16, not remediation host.

disclosure of **how** the claimed "remediation host" provides the functional anti-contagion software or security updates as described in column 16, lines 19–23. GBr.20. Recognizing this problem, K.Mizra and its expert scour the specification for possible remediation data (K.Br.18-20), but that does nothing to demonstrate that the "remediation host" is sufficiently structural. And Dr. Cole conceded that the examples of remediation data are not claimed. Ex. A at 49:6-51:17. "[M]erely listing examples of possible structures is insufficient to avoid invocation of § 112, ¶ 6 … examples of structures [are] not a basis for distinguishing structural language from § 112, ¶ 6." *Bosch*, 769 F.3d at 1101. In the same vein, K.Mizra and its expert, again, attempt to rewrite the patent, asserting that the "remediation server" and "remediation host" are interchangeable. K.Br.17; Dkt 43-11 ¶ 44. But "[h]ad the inventor meant '[remediation server],' he could have used that word." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1374 (Fed. Cir. 2004). Dr. Cole even acknowledged "remediation server" was not claimed. Ex. A at 27:23-29:6. The inventors knew how to say "server," claiming a "quarantine server" and referencing "web server," "DNS server," "quarantine server" and a "remediation server" in the specification. '705 Patent, 12:3-11, 15:57-67. Dr. Cole cannot "rewrite the patent's specification … to retroactively import structure that is totally absent from the patent." *Sisvel Intl. S.A. v. Sierra Wireless*, Inc., 82 F.4th 1355, 1366 (Fed. Cir. 2023).

Finally, K.Mizra and Dr. Cole fail to address, "[i]f the function [of remediating] is performed by a general-purpose computer or microprocessor, then the second step generally further requires that the specification disclose **the algorithm** that the computer performs to accomplish that function." *Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002, 1007 (Fed. Cir. 2021); GBr.20. This failure to identify an algorithm is underscored by Dr. Cole repeatedly describing his opinions as "complete." Ex. A at 11:14-24, 54:14-22.

10

Dated: October 7, 2025

Respectfully submitted,

By:  *Michael E. Jones with permission*
     *from Tharan Gregory Lanier*
Tharan Gregory Lanier (*Admitted Pro Hac Vice*)
tglanier@jonesday.com
Evan McLean (*Admitted Pro Hac Vice*)
emclean@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone: +1.650.739.3939
Facsimile:  +1.650.739.3900

Michael A. Lavine (*Admitted Pro Hac Vice*)
mlavine@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile:  +1.415.875.5700

Sachin M. Patel (*Admitted Pro Hac Vice*)
smpatel@jonesday.com
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile:  +1.312.782.8585

Michael E. Jones
TX State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
TX State Bar No. 24074372
shaunhassett@potterminton.com
POTTER MINTON
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: +1.903.597.8311
Facsimile:  +1.903.593.0846

*Counsel for Defendant Google LLC*