IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| K.MIZRA LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No.: 1:25-cv-00236-ADA<br><br>Jury Trial Demanded |

**K.MIZRA LLC'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I.  ARGUMENT ................................................................................................................... 1

    A.  Term 1: "protected network" (all asserted claims) ............................................ 1

    B.  Term 2: "trusted computing base" (all asserted claims) .................................... 1

    C.  Term 3: "valid digitally signed attestation of cleanliness"
        (all asserted claims) ............................................................................................ 2

    D.  Term 4: "includes at least one of an . . . and an . . ."
        ('705 Patent, all asserted claims) ........................................................................ 3

    E.  Term 5: "quarantine" or "quarantining" (all asserted claims) .......................... 5

    F.  Term 6: "quarantine server" (all asserted claims) ............................................. 6

    G.  Term 7: "a remediation host configured to provide data
        usable to remedy the insecure condition" (all asserted claims) ........................ 7

II. CONCLUSION ............................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*3rd Eye Surveillance, LLC v. United States*,
   No. 15-501C, 140 Fed. Cl. 39 (2018) ................................................................................... 5

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
   830 F.3d 1341 (Fed. Cir. 2016) ........................................................................................... 8

*AlmondNet, Inc. v. Microsoft Corp.*,
   Nos. 6:21-CV-00897-ADA, 6:21-CV-00898-ADA,
   2023 WL 11983063 (W.D. Tex. June 19, 2023) ......................................................... 1, 3, 5

*Apex Inc. v. Raritan Computer, Inc.*,
   325 F.3d 1364 (Fed. Cir. 2003) ........................................................................................... 9

*Apple Inc. v. Motorola Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ....................................................................................... 7, 8

*Dyfan, LLC v. Target Corp.*,
   28 F.4th 1360 (Fed. Cir. 2022) ........................................................................................ 7, 8

*Ethanol Boosting Sys., LLC v. Ford Motor Co.*,
   No. 2021-1949
   2022 WL 2798395 (Fed. Cir. July 18, 2022) ....................................................................... 6

*Fitbit, Inc. v. Aliphcom,*
   No. 15-cv-04073-EJD,
   2017 WL 386257 (N.D. Cal. Jan. 27, 2017) ........................................................................ 9

*Int'l Rectifier Corp. v. IXYS Corp.*,
   361 F.3d 1363 (Fed. Cir. 2004) ........................................................................................... 5

*Integrated Claim Sys., LLC v. Travelers Indem. Co.*,
   758 F. App'x 965 (Fed. Cir. 2019) ...................................................................................... 8

*Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*,
   649 F.3d 1350 (Fed. Cir. 2011) ........................................................................................... 9

*Iridescent Networks, Inc. v. AT&T Mobility LLC*,
   No. 6:16-CV-01003,
   2017 WL 10185852 (E.D. Tex. Dec. 12, 2017) ................................................................... 5

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ............................................................................................. 3

*MicroPairing v. Toyota Motor Mfg. Texas, Inc.*,
   No. SA-21-cv-00940-XR,
   2022 WL 62540 (W.D. Tex. Jan. 5, 2022) .......................................................................... 4

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000) ............................................................................... 6

*Nevro Corp. v. Boston Sci. Corp.*,
    955 F.3d 35 (Fed. Cir. 2020) ................................................................................... 9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................... 8

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ............................................................................... 6

*R2 Sols. LLC v. Databricks, Inc.*,
    No. 4:23-cv-1147,
    2024 WL 5058965 (E.D. Tex. Dec. 10, 2024) ........................................................ 8

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
    824 F.3d 999 (Fed. Cir. 2016) ................................................................................. 5

*Shotkam LLC v. Tachyon, Inc.*,
    No. H-20-1070,
    2021 WL 23311 (S.D. Tex. Jan. 4, 2021) ................................................................ 5

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    983 F.3d 1367 (Fed. Cir. 2021) ............................................................................... 4

*SitePro, Inc. v. WaterBridge Res. LLC*,
    No. 6:23-cv-115-ADA-DTG,
    2024 WL 760923 (W.D. Tex. Feb. 23, 2024), *adopted*
    2024 WL 2031783 (W.D. Tex. May 7, 2024). ......................................................... 9

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
    Nos. 4:18-cv-474, 4:18-cv-475,
    4:18-cv-476, 4:18-cv-477,
    2019 WL 4259020 (E.D. Tex. Sept. 9, 2019) .......................................................... 8

*Zeroclick, LLC v. Apple Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018) ............................................................................... 7

I.     ARGUMENT

    A.     Term 1: "protected network" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | private network, distinct from public networks like the Internet |

Google concedes that the patentees did not *expressly* define a "protected network" as a "private network." Instead, Google now suggests that the patentees somehow defined a "protected network" as a "private network" *by implication*. *See* Google's Reply Brief (Doc. 49) ("Reply") at 1 (emphasis added). That cannot be the case, since a patentee can act as their own lexicographer only by clearly setting forth a definition of the disputed claim term and by *clearly expressing an intent to define that term* in a manner other than its plain-and-ordinary meaning. *See, e.g., AlmondNet, Inc. v. Microsoft Corp.*, Nos. 6:21-CV-00897-ADA, 6:21-CV-00898-ADA, 2023 WL 11983063, at *2 (W.D. Tex. June 19, 2023) (addressing the only two exceptions to the general rule that claim terms are assigned their plain-and-ordinary meaning). The disputed term "protected network" must then stand on its own unless there is a *clearly expressed intent* by the patentees to define the term as something other than its plain and ordinary meaning, and such intent is utterly absent here. For this reason alone, Google's efforts to rewrite and add extraneous language to the claims should be rejected. "[P]rotected network" should be construed as having its plain-and-ordinary meaning. *See id.* at *12.

    B.     Term 2: "trusted computing base" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| hardware or software that has been designed to be a part of the mechanism that provides security to a computer system | hardware or software within the first host that provides security to the host |

The plain language of the claims shows that "within the first host" modifies the term "trusted platform module." But there simply is no indication in the specification, the prosecution history, or the plain language of the claims themselves that the phrase "within the first host" also

1

modifies the term "trusted computing base." The trusted computing base (TCB) *is associated* with the trusted platform module (TPM), but nothing in the intrinsic record requires the TCB to be located within the first host. The plain language of the claims supports this interpretation. *See, e.g.*, '705 Patent, 22:21-22 (Claim 19) ("a trusted computing base associated with a trusted platform module within the first host").

As it did in its opening brief, Google cites a passage directed to the Liang prior art reference in support of its position. *See* Reply at 2 ("Liang does not anticipate **a trusted platform module**, nor a **trusted computing base associated with a trusted platform module**.") (emphases by Google). This passage, however, does not indicate or suggest that the TCB *must be* located "within the first host." Instead, it simply indicates that the TCB is "associated with" the TPM, which is undisputed.

Again, as it did in its opening brief, Google also cites to bullet-point passages from the specification for the proposition that the specification "discloses the 'trusted computing base within a computer' where the computer is the 'first host.'" Reply at 3. The specification does not support that proposition. Google's cited specification passages simply state that a TCB *may* be located within *a computer*. Those passages do not state that the TCB *must* be located within the *first host*. The claim language controls. The Court should adopt K.Mizra's proposed construction of "trusted computing base."

C.   Term 3: "valid digitally signed attestation of cleanliness" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | plain and ordinary meaning, wherein the plain and ordinary meaning is that the "attestation of cleanliness" is digitally signed by and received from the "trusted computing base" |

Google asserts that "K.Mizra's response misrepresents Judge Gilstrap's order and ignores express claim language." Reply at 4. To the contrary, K.Mizra's response was and remains entirely faithful to Judge Gilstrap's claim construction order, which merely indicated that the attestation of cleanliness was *received from* the TCB. Google, on the other hand, seeks to alter

2

Judge Gilstrap's construction of this term by adding the phrase "digitally signed by and" even though the claim language does not require that the attestation of cleanliness must be digitally signed *by* the TCB.

Google also cites a single passage from the specification to support its position. *See* Reply at 4. However, the full specification passage states: "*In some embodiments*, trusted code bases *may* digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers." '705 Patent, 14:10-12 (emphases added). In making the argument that this single specification passage supports its proposed claim construction, Google runs afoul of the rule that "[i]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *AlmondNet*, 2023 WL 11983063, at *2 (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004)). That rule is especially true when the specification passage is textually permissive, as it is here due to the unambiguous use of "may" in the passage.

The term "valid digitally signed attestation of cleanliness" should be given its plain-and-ordinary meaning, consistent with Judge Gilstrap's claim construction order.

### D. Term 4: "includes at least one of an . . . and an . . ." ('705 Patent, all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary disjunctive meaning | includes at least one of an . . . and at least one of an . . . |

*SuperGuide* does not here apply, meaning the disputed term should not be construed as conjunctive but should be given its plain-and-ordinary *disjunctive* meaning, pursuant to the *applicable* law. The claim language and supporting specification indicate that there are two alternative ways to determine whether a host computer is "clean" using the claimed "attestation of cleanliness." First, an attestation that the trusted computing base has ascertained that the first host

3

is not infested can support a cleanliness finding.  Second, an attestation that the trusted computing base has determined that the host computer has been "patched" can support a cleanliness finding.  The limitation textually presents a binary and logical choice between two separate and distinct types of attestations of cleanliness and, as a result, the term should be read in the disjunctive.

Google asserts that the two types of attestations are not mutually exclusive because the specification teaches that the invention "*may contain both*."  Reply at 5 (emphasis by Google).  The specification does no such thing.  Instead, the specification discloses separate, alternative embodiments corresponding to the claim language.  The specification discloses the first alternative embodiment in stating that "*[i]n some embodiments*, trusted code bases may digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers."  '705 Patent, 14:10-12 (emphasis added).  Alternatively, the specification discloses a second alternative embodiment in stating that "*[i]n some embodiments*, an operating system may respond with information associated with its patch level, wherein a sufficiently recent patch level may be interpreted as an attestation of cleanliness."  '705 Patent, 14:19-22 (emphasis added).

Google next asserts that K.Mizra "fail[ed] to engage" with the Federal Circuit's opinion in *SIMO*.  Reply at 5.  K.Mizra did not engage with that opinion because, in *SIMO*, the court addressed the term "*a plurality of*," not the here-involved term "at least one of an . . . and an . . . ."  *SIMO*'s facts and holdings simply are not applicable to the term in dispute here.  *See SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1377 (Fed. Cir. 2021) (noting that "[t]he phrase 'a plurality of' means 'at least two of'").

Here, the claims and specification present two separate and distinct alternatives for ascertaining the "cleanliness" of a computer.  *Only one of the two is textually required for the claim limitation to be met*.  *See MicroPairing v. Toyota Motor Mfg. Texas, Inc.*, No. SA-21-cv-00940-XR, 2022 WL 62540, at *19-20 (W.D. Tex. Jan. 5, 2022) (*SuperGuide* inapplicable when

the listed items following "at least one of" are not categories containing many possible values); *3rd Eye Surveillance, LLC v. United States*, No. 15-501C, 140 Fed. Cl. 39, 69 (2018); *Iridescent Networks, Inc. v. AT&T Mobility LLC*, No. 6:16-CV-01003, 2017 WL 10185852, at *3-4 (E.D. Tex. Dec. 12, 2017); *Shotkam LLC v. Tachyon, Inc.*, No. H-20-1070, 2021 WL 23311, at *5-10 (S.D. Tex. Jan. 4, 2021). The term "includes at least one of an . . . and an . . ." should be given its plain-and-ordinary *disjunctive* meaning, pursuant to the applicable case law.

E.  Term 5: "quarantine" or "quarantining" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | isolating from the protected network |

First, Google violates a basic tenet of claim construction in asking the Court to rewrite the claims by replacing "quarantining" with "isolating." Second, the patentee did not act as their own lexicographer by clearly setting forth a definition of "quarantining" and by clearly expressing an intent to define that term in a manner other than its plain-and-ordinary meaning (i.e., to redefine it as "isolating"). *See AlmondNet*, 2023 WL 11983063, at *2. Third, Google itself appears to recognize that a quarantined host computer must be able to interact with the protected network at least to the extent required to access remediation services. *See* Reply at 6. A quarantined host computer can access such remediation services, while a truly "isolated" host computer would be prevented from doing so. The distinct terms "quarantined" and "isolated" are never used synonymously or interchangeably in the claims, specification, or prosecution history.

Finally, Google argues that the patentees somehow expressly or implicitly defined "quarantining" as "isolating" because the *titles* of the patents include the word "isolation." *See* Reply at 6 (citing *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1003 n.2 (Fed. Cir. 2016)). This citation actually proves the opposite. Had the patentees wished to use the term "isolation" in the claims, they "could have done so." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1374 (Fed. Cir. 2004) ("[W]e must consider the word that the inventor actually

5

chose . . .")." The patentees instead chose the term "quarantining," which is consistent with the purpose and functionality of the patented invention. The Court should defer to that choice. And while a patent's title may be considered during claim construction, the Federal Circuit has cautioned that "the bar on importing limitations from the written description into the claims applies no less forcefully to a title." *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1111 (Fed. Cir. 2000). The Federal Circuit has also observed that a patent's title approaches "*near irrelevancy*" for purposes of claim construction. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1312 (Fed. Cir. 1999) (emphasis added); *see also Ethanol Boosting Sys., LLC v. Ford Motor Co.*, No. 2021-1949, 2022 WL 2798395, at *3 (Fed. Cir. July 18, 2022) (patent titles "do not support the district court's imported claim requirement . . ."). The terms "quarantine" and "quarantining" should be given their plain-and-ordinary meanings.

### F.     Term 6: "quarantine server" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | server to which a quarantined host's network traffic is redirected |

Contrary to Google's assertion, K.Mizra did not "advance[] its own definition" of this term. Reply at 7. K.Mizra merely referred to certain functions performed by the quarantine server, consistent with the claim language and the specification. Google also suggests that its proposed construction "would assist the jury to distinguish between different types of servers." Reply at 7. But different servers are assigned different names by their adjectives, and a reasonable jury would understand, for example, that a "*quarantine* server" performs different functions than a "*remediation* server."

Google impermissibly seeks to rewrite the claims and add extraneous language to them; specifically, the phrase "to which a quarantined host's network traffic is redirected." But the specification and figures teach us and a POSITA that not all network traffic for a quarantined host

6

is "redirected" to (and stops at) the quarantine server. For example, the claims make clear that a quarantined host is not simply sent to "time out" on the quarantine server but is further permitted "to communicate with the remediation host." '705 Patent, 22:48-49. The claims also state that the quarantine server is "configured to serve [a] quarantine page . . . ." *Id*., 22:43-44. The specification teaches that the quarantine server is also "configured to provide a notice and/or other information and/or instructions to a user of the quarantined host." *Id.*, 12:10-11. These passages from the claims and specification indicate that not all of a quarantined host's "traffic" flows to and stops at the quarantine server, which would be required by Google's self-serving construction. Google's proposed definition is misleading, inconsistent with the teachings of the claims and specification, and would only serve to confuse the jury.

### G. Term 7: "a remediation host configured to provide data usable to remedy the insecure condition" (all asserted claims)

| K.Mizra's Construction | Google's Construction |
|---|---|
| plain and ordinary meaning | Subject to 35 U.S.C. § 112(f).<br>Function: "provide data usable to remedy the insecure condition"<br>Structure: Indefinite |

The most important part of Google's Reply regarding "remediation host" is what it did not—and could not—contest. Google does not dispute that the claims themselves provide structure, K.Mizra LLC's Responsive Claim Construction Brief ("Resp."), Doc. 43 at 16-17, or that a POSITA would understand "remediation host" refers to classes of existing structures. Resp. at 18. Either of these failures is dispositive and devastates Google's invalidity position. *See Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1367-68 (Fed. Cir. 2022); *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1299 (Fed. Cir. 2014). Nor could Google distinguish cited cases establishing that Google's own definition of "host" contradicts its argument. Resp. at 14-15. Particularly in view of the unrebutted expert

7

testimony of Dr. Cole here, Google cannot overcome the presumption against interpreting the term under Section 112, ¶ 6.

Rather than addressing Plaintiff's arguments, Google leads with a strawman: that "remediation host" does not appear in the prior art. But where "a claim term itself connotes some structure [], the presumption . . . is determinative . . . ." *Dyfan*, 28 F.4th at 1366. The base term "host" alone provides that structure. And Google simply ignores cited case law that supports reliance on a base term, such as "host", to establish structure. Resp. at 16 n.5. Indeed, courts routinely rely on base terms to find structure. *See, e.g., Apple*, 757 F.3d at 1300-1304 (focusing on base term "heuristic"). Google only cites *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, to suggest that reliance on the base term is inappropriate, but that decision was based on facts specific to the patent asserted there. 830 F.3d 1341, 1348 (Fed. Cir. 2016) (discussing combination of terms "as used in the context of the relevant claim language"). Indeed, courts have repeatedly distinguished *Advanced Ground Info. Sys.* where the base term connotes structure. *See, e.g., R2 Sols. LLC v. Databricks, Inc.*, No. 4:23-cv-1147, 2024 WL 5058965, at *6-7 (E.D. Tex. Dec. 10, 2024). Again, Google's own definition of "host" makes this point. *See Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, Nos. 4:18-cv-474, 4:18-cv-475, 4:18-cv-476, 4:18-cv-477, 2019 WL 4259020, at *8-9 (E.D. Tex. Sept. 9, 2019) (distinguishing *Advanced Ground Info. Sys.* where defendants' expert admitted base term was a known structure).

Rather than attempting to show the specification indicates "host" is not structure, Google here asks the Court to *ignore* other uses of "host" in the Asserted Patents. But Google is wrong that such uses are irrelevant to whether a POSITA would understand "host" connotes structure. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (noting that "claim terms are normally used consistently throughout the patent"); *see also Integrated Claim Sys., LLC v. Travelers Indem. Co.*, 758 F. App'x 965, 967 (Fed. Cir. 2019) (non-precedential) (finding no basis

8

for suggestion that "field" means different things in "identifiable fields" and "fields of the GUI"). And notably, Google does not even pretend that "host" does not connote structure in the Asserted Patents; for example, it did not suggest "first host" is subject to Section 112, ¶ 6.[1]

Google also takes issue with the argument that a POSITA would understand "remediation host" is a "remediation server" because "remediation server" does not appear in the claim. But Federal Circuit precedent supports this argument. *See Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1358-59 (Fed. Cir. 2011) (finding "modernizing device" would be understood as an electrical circuit even though "electrical circuit" was not part of the claim term).

Even if Section 112, ¶ 6 applied, and it does not, no algorithm is required to preserve validity of the claim. *See Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 43 (Fed. Cir. 2020) (noting case law "does not require a specific algorithm when the identified structure is not a general-purpose computer or processor"). Courts routinely recognize that a "server" is a sufficient disclosure of corresponding structure. *See, e.g., SitePro, Inc. v. WaterBridge Res. LLC*, No. 6:23-cv-115-ADA-DTG, 2024 WL 760923, at *29 (W.D. Tex. Feb. 23, 2024) (identifying "site server" as corresponding structure), *adopted* 2024 WL 2031783 (W.D. Tex. May 7, 2024). Nor does Google establish that an algorithm is required even if a server were a general-purpose computer given the nature of the function here, which describes the provision of data. *See, e.g., Fitbit, Inc. v. Aliphcom,* No. 15-cv-04073-EJD, 2017 WL 386257, at *12 (N.D. Cal. Jan. 27, 2017) (finding "relatively simple" function of transmitting a data signal does not require algorithm).

---

[1] It is not K.Mizra's burden to show that the specification establishes "remediation host" connotes structure; it is Google's burden to show it does not. *See Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1373 (Fed. Cir. 2003) ("In the absence of sufficient evidence, the presumption stands."). Google cannot meet this burden by ignoring other uses of "host" in the specification.

9

## II.     CONCLUSION

K.Mizra respectfully requests that this Court adopt K.Mizra's proposed constructions.

Dated: October 14, 2025

Respectfully submitted,

By: /s/ Bart A. Starr
Michael C. Smith
Texas Bar No. 18650410
michael.smith@solidcounsel.com
Scheef & Stone, LLP
113 E. Austin Street
Marshall, TX 75670
(903) 938-8900

Robert R. Brunelli (Admitted *pro hac vice*)
CO State Bar No. 20070
 rbrunelli@sheridanross.com
Bart A. Starr (Admitted *pro hac vice*)
CO State Bar No. 50446
 bstarr@sheridanross.com
Brian S. Boerman (Admitted *pro hac vice*)
CO State Bar No. 50834
 bboerman@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
litigation@sheridanross.com

*Of Counsel:*
Claire A. Henry
Texas Bar No. 24053063
Miller Fair Henry PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
claire@millerfairhenry.com

*Attorneys for Plaintiff K.Mizra LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing document has been served on October 14, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Bart A. Starr
Bart A. Starr
bstarr@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
