**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **K.MIZRA LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **-v-** | § | **1:25-CV-00236-ADA** |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |

CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF

Before the Court are the Parties' claim construction briefs: Defendant Google LLC's Opening and Reply briefs (ECF Nos. 42 and 49, respectively) and Plaintiff K.Mizra LLC's Response and Sur-Reply briefs (ECF Nos. 43 and 50, respectively). The Court provided preliminary constructions for the disputed terms one day before the hearing. The Court held the *Markman* hearing on October 27, 2025. ECF No. 56. During that hearing, the Court informed the Parties of the final constructions for the disputed terms. *Id.* This Order does not alter any of those constructions.

## I.    DESCRIPTION OF THE ASSERTED PATENTS

Plaintiff asserts U.S. Patent Nos. 8,234,705 and 9,516,048. The '705 Patent is entitled "Contagion isolation and inoculation" while the '048 Patent is entitled "Contagion isolation and inoculation via quarantine." The parties agree that the specifications are at least nearly identical. Opening at 1, Response at 1, n.1.

Plaintiff is currently asserting Claims 12, 13, 16, and 19 of the '705 Patent and Claims 10, 11, 14, 17, and 18 of the '048 Patent. With the exception of Term #4, the disputed terms appear

in all asserted claims for both patents.  Term #4 only appears in the asserted claims of the '705

Patent.

The Asserted Patents are directed towards network security, specifically towards contagion

isolation and inoculation.  *See* '705 Patent at 1:14–41, Abstract.  The Abstract describes that:

> In some embodiments, a request is received from a host, e.g., via a network
> interface, to connect to a protected network. It is determined whether the host is
> required to be quarantined.  If the host is required to be quarantined, the host is
> provided only limited access to the protected network.  In some embodiments, a
> quarantined host is permitted to access the protected network only as required to
> remedy a condition that caused the quarantine to be imposed, such as to download
> a software patch, update, or definition; install, remove, and/or configure software
> and/or settings as required by a policy; and/or to have a scan or other diagnostic
> and/or remedial operation performed.  In various embodiments attempts to
> communicate with hosts not involved in remediation are redirected to a quarantine
> system, such as a server, that provides information, notices, updates, and/or
> instructions to the user.

Figure 10B is a block diagram "illustrating a network environment in which infected hosts

and/or networks are quarantined according to some embodiments."  *Id.* at 2:14–16.



FIG. 10B

Of particular relevance for this Order, Figure 10B depicts *m* hosts, which could be infected, a quarantine server, and a remediation server.

## II.     LEGAL STANDARD

### A.  General principles

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("[t]here is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted).  The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).  To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.  "For a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of

disclaimer.'" *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003)).

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication

in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

### B.  Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

In the context of a claim governed by § 112, ¶ 6, the claim is indefinite if the claim fails to disclose adequate corresponding structure to perform the claimed functions. *Williamson*, 792 F.3d at 1351–52. The disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Id.* at 1352. Computer-implemented means-plus-function claims are indefinite unless

the specification discloses an algorithm to perform the function associated with the limitation. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1319 (Fed. Cir. 2012).

### C.  Means-Plus-Function Claiming

A patent claim may be expressed using functional language.  *See* 35 U.S.C. § 112 ¶ 6.[1] *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–49 (Fed. Cir. 2015).  In particular, § 112, ¶ 6 provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function."  *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002).

The presumption is that terms reciting "means" are subject to § 112, ¶ 6.  *Williamson*, 792 F.3d at 1348.  But if the term does not use the word "means," then it is presumed not to be subject to § 112, ¶ 6.  *Id.*  "That presumption can be overcome, but only if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function."  *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342 (Fed. Cir. 2020) (internal quotations removed) (citing *Williamson*, 792 F.3d at 1349).  "The correct inquiry, when 'means' is absent from a limitation, is whether the limitation, read in light of the remaining claim language, specification, prosecution history, and relevant extrinsic evidence, has sufficiently definite structure to a person of ordinary skill in the art."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014), *overruled on other grounds by Williamson*, 792 F.3d at 1349.

When § 112 ¶ 6 applies, it limits the scope of the functional term "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and

---

[1] The American Invents Act of 2011 changed the numbering of the relevant subsection from § 112, ¶ 6 to § 112(f). Because the substance of the subsection did not change, the undersigned will refer to the relevant subsection as § 112, ¶ 6 in keeping with the numeration at the time of the patent filing.

equivalents thereof." *Williamson*, 792 F.3d at 1347.  Construing a means-plus-function limitation involves multiple steps.  "The first step . . . is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). "[T]he next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.*  A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.*  The focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.*  The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005).  However, § 112, ¶ 6 does not permit "incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

For § 112, ¶ 6 limitations implemented by a programmed general-purpose computer or microprocessor, the corresponding structure described in the patent specification must include an algorithm for performing the function, *i.e.*, the corresponding structure is a processor + algorithm. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339,1349 (Fed. Cir. 1999).  In this situation, the corresponding structure is not a general-purpose computer but rather the special purpose computer programmed to perform the disclosed algorithm. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).  The algorithm may be described in "any understandable terms," such as "as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d

1310, 1318 (Fed. Cir. 2013). Federal Circuit caselaw does not require that the patent describe an algorithm "if the selection of the algorithm or group of algorithms needed to perform the function in question would be readily apparent to a person of skill in the art." *Aristocrat Techs. Australia Pty Ltd. v. Multimedia Games, Inc.*, 266 F. App'x 942, 947-48 (Fed. Cir. 2008).

Finally, § 112, ¶ 6 does not apply when the claim itself describes the algorithm. *St. Isidore Rsch., LLC v. Comerica Inc.*, No. 2:15-CV-1390-JRG-RSP, 2016 WL 4988246, at *13 (E.D. Tex. Sept. 19, 2016).

## III.    LEGAL ANALYSIS

### A.  Term #1: "protected network"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #1: "protected network"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning | "private network, distinct from public networks like the Internet" |

**The Parties' Positions:**

Defendant contends that the claim language requires that a "protected network" is more than just a "network," which is reflected in Defendant's proposed construction. Opening at 2. Defendant contends that, by contrast, Plaintiff's proposed construction reads "protected" out of the term. Opening at 2–3. Based on that, Defendant contends that contruction is necessary to assist the jury. *Id.*

Defendant contends that the intrinsic evidence confirms that a "protected network" is different than a public network like the Internet. *Id.* at 3. More specifically, Defendant contends that because the claim term is a "protected network" and not merely a "network," adopting Plaintiff's construction would render "protected" superfluous, which is disfavored. *Id.* (citing cases). Defendant further contends that the specification "repeatedly distinguishes" "protected networks" from public networks like the Internet. *Id.* (citing '705 Patent at 4:56–57, 6:66–7:2).

Defendant contends that "[c]ontemporaneous extrinsic evidence reflecting the POSITA's objective understanding of 'protected network' further supports [its] construction[.]" *Id.* at 4 (citing documents).

In its response, Plaintiff contends that Defendant improperly attempts to construe "protected" as "private," but the plain meaning of "protected" does not require that the network is "private" (or "public"). Response at 2. Plaintiff contends that the patentee knew how to claim "private network" if desired. *Id.* (citing '705 Patent at 11:67). Plaintiff contends that there is no intrinsic or extrinsic support that "protected" is synonymous with "private." *Id.*

Plaintiff contends that Defendant does not allege lexicography or disclaimer, which are the only two exceptions to plain-and-ordinary meaning. *Id.* at 3 (citing *Thorner*, 669 F.3d at 1368). Plaintiff contends that the extrinsic evidence that Defendant cites do not "recite both the terms 'protected network' and 'private network' in the same quotation, and none use the terms synonymously or interchangeably." *Id.*

In its reply, Defendant contends that the patentee implicitly defined the meaning of this term to be distinct from public networks. Reply at 1. More specifically. Defendant contends that because the specification distinguishes the "protected network" from public networks such as the

Internet, a "protected network" "must be a 'private network, distinct from public networks like the Internet,'" allowing for limited access." *Id.* (citing '705 Patent at 1:38–41, 1:17-19, 1:20–22).

Defendant contends that the specification is "dispositive," the Court is also "authorized" to rely on extrinsic evidence. *Id.* (citing *Phillips*, 415 F.3d at 1317). Defendant contends that the extrinsic evidence it cites "distinguishes public and protected networks, confirming that public networks like the Internet cannot be 'protected networks.'" *Id.* at 1–2 (citing Opening, Ex. 4 (U.S. Patent No. 6,345,299) at 1:37–39).

In its sur-reply, Plaintiff contends that "patentee can act as their own lexicographer only by clearly setting forth a definition of the disputed claim term and by *clearly expressing an intent to define that term* in a manner other than its plain-and-ordinary meaning." Sur-Reply at 1 (citing *AlmondNet, Inc. v. Microsoft Corp.*, Nos. 6:21-CV-00897-ADA, 6:21-CV-00898-ADA, 2023 WL 11983063, at *2 (W.D. Tex. June 19, 2023)) (emphasis in Plaintiff's brief). Plaintiff contends that "intent is utterly absent here" and thus the term should be construed as having its plain-and-ordinary meaning. *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning are lexicography and disclaimer. *Thorner*, 669 F.3d at 1365. Defendant does not allege disclaimer, but do allege that the patentee acted as their own lexicographer.

But after analyzing the passages that Defendant cites from the specification, the Court concludes that there was neither clear intent nor clear definition to support lexicography. *Hill-Rom Servs.*, 755 F.3d at 1371 (Fed. Cir. 2014) ("[t]o act as its own lexicographer, a patentee must [1] clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and must [2] "clearly express an intent to redefine the term.") (annotations added). The first passage Defendant cites recites "[t]herefore, there is a need for a reliable way to ensure that a system does not infect or otherwise harm other network resources when connected to a protected network." '705 Patent at 1:38–41. This passage only describes a particular need in the prior art. But there is no clear intent to define "protected network," much less a clear definition. The second passage recites "reconnect after a period of connection to one or more networks and/or systems that are not part of the service provider, enterprise, or other protected network." *Id.* at 1:17–19. This passage only uses "protected network" to describe a category of networks. But there is no clear intent to define "protected network," much less a clear definition. The third passage that Defendant cites recites "roaming to unknown domains, such as the Internet, and/or connecting to such domains through public, wireless, and/or otherwise less secure access node[.]" *Id.* at 1:20–22. This passage does not even use the term "protected network," which indicates there is no clear intent to redefine the term, much less a clear definition.

In addition, Defendant did not allege lexicography until its reply brief, so that argument is waived. *United States v. Jackson*, 426 F.3d 301, 304 n. 2 (5th Cir.2005) ("[a]rguments raised for the first time in a reply brief, even by pro se litigants ... are waived.").

***Third***, more generally, there is no intrinsic evidence that a "protected network" is synonymous with a "private network." Defendant cites a number of passages ('705 Patent at 11:57–67, 4:56–57, 6:66–7:2, 1:38–41, 1:17–19, 1:20–22), but none of them equate "protected

11

network" with a "private network." The second, third, and sixth passages do not even recite "protected network," so they obviously do not equate "protected network" with a "private network." '705 Patent at 4:56–57, 6:66–7:2, 1:20–22. The fourth and fifth passage do not recite "private network" (or contrast a "protected network" with a public network) , so they also do not equate "protected network" with a "private network." '705 Patent at 1:38–41, 1:17–19.

While the first passage recites both a "protected network," and "private network" and "public network" / the Internet, this passage does not equate "protected network" with a "private network, but rather describes that the access between a "protected network" and a "private network," "public network," or the Internet may be controlled. In other words, rather than equating a "protected network," and "private network," this passage groups a "private network," "public network," or the Internet together and describes that a "protected network" may connect with any of them.

***Fourth***, with respect to the extrinsic evidence Defendant cites, given that there is no ambiguity in the intrinsic evidence, there is no need to rely on extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("[i]n those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper."). Furthermore, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1318. Finally, given that Defendant allege lexicography—which the Court rejected for the reasons above—Defendant's citation of extrinsic evidence is irrelevant as patentee's redefinition will only appear in the intrinsic evidence, and not in the extrinsic evidence.

Therefore, for the reasons described above, the Court construes this term as plain-and-ordinary meaning.

### B.  Term #2: "trusted computing base"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #2: "trusted computing base"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by both sides | "hardware or software that has been designed to be a part of the mechanism that provides security to a computer system" | "hardware or software within the first host that provides security to the host" |

**<u>The Parties' Positions:</u>**

This term appears in a larger phrase "a trusted computing base associated with a trusted platform module within the first host."  The dispute between the parties is whether the "trusted computing base" is within the first host (Defendant's position) or not (Plaintiff's position).

Defendant contends that Plaintiff "recycles its previously-litigated construction, arguing that the trusted computing base can be located ***anywhere*** based on the plain language of the claim.'"  Opening at 4–5 (quoting Opening, Ex. 5 at 6) (emphasis in original).  But Defendant contends that claim language requires that the "a trusted computing base" is in the "first host." *Id.* More specifically, Defendant contends that "the claim language 'within the first host' further modifies the whole ('a trusted computing base associated with a trusted platform module'), not the part ('a trusted platform module')." *Id.*

Defendant contends that, in a prior case, Plaintiff argued that the "'trusted computing base['] can be located within ***any*** computer, provided that it is associated with the trusted platform module within the first host." *Id.* at 5 (quoting Opening, Ex. 5 at 6) (emphasis in original). Defendant contends that the Court should reject Plaintiff's "misreading of 'associated with'

because it redrafts the asserted claims to have a trusted computing base 'within *any* computer.'" *Id.* (emphasis in Defendant's brief).

Defendant contends that the specification provides examples that show that the trusted computing base must be within the first host like the trusted platform module. *Id.* at 6 (citing '705 Patent at 13:64–67, 14:7–9, 14:10–12, 14:1–7). Defendant contends that "[i]f the applicant intended the 'trusted computing/code base' to be on 'any' or 'another' computer instead of 'within the first host,'" the inventor knew how to say so. *Id.* (citing '705 Patent at 8:19–20, 16:60–63, 10:11–13).

Defendant contends that, during prosecution of the '705 Patent, Applicant "intended that the 'trusted computing base' to be within the first host, where it indicated 'a trusted platform module' to be a part that modifies 'a trusted computing base associated with a trusted platform module,' a whole." *Id.* at 7 (citing Opening, Ex. 6 at 248). Defendant contends that Applicant "failed to correct the examiner's understanding that 'within the first host' modifies 'a trusted computing base associated with a trusted platform module.'" *Id.* Defendant contends that, after amending the claims, Applicant repeatedly used the phrase "a trusted computing base associated with a trusted platform module," without mentioning "within the first host," which indicates that the latter modifies the former, *i.e.* that the "trusted computing base" is also "within the first host." *Id.* (citing Opening, Ex. 6 at 248, 249).

Defendant contends that Examiner also "demonstrated the understanding that 'a trusted computing base associated with a trusted platform module' was to be "within a first client." *Id.* More specifically, Defendant contends that one of Examiner's obviousness combinations required "'detecting an insecure condition *in a client computing device*' (i.e., within a first host), as well

as 'contacting a trusted computing base associated with a trusted platform module' (also in the first host), respectively." *Id.* (citing Opening, Ex. 6 at 227–28).

Defendant contends that extrinsic evidence shows that the "trusted computing base and its associated trusted platform module were within the first host." *Id.* (citing Opening, Ex. 8 at 1).

In its response, Plaintiff contends that the claim language only requires that the trusted computing base be "associated with" a trusted platform module. Response at 4. Plaintiff contends that had the patentee intended for the trusted computing base to be in the first host, the patentee could have done so. *Id.*

Plaintiff contends that the specification does not require that the trusted computing base must be in the first host, but it "indicates that the [trusted computing base] may, as one example, be 'within a computer.'" *Id.* (citing '705 Patent at 13:67).

With respect to the prosecution history, Plaintiff contends that "the prosecution history compels the interpretation that the [trusted computing base's] hardware/software provides security *to the entire computer system*[.]" *Id.* at 4–5 (emphasis in Plaintiff's brief). Plaintiff contends that one of the snippets from the prosecution history that Defendant cites demonstrates that Plaintiff's proposed construction is correct: "A given piece of *hardware or software* is a part of the [trusted computing base] if and only if it has been designed to be a part of the mechanism that *provides its security to the computer system*." *Id.* at 5 (quoting Opening, Ex. 6 at 248 (emphases in Plaintiff's brief)).

Plaintiff contends that extrinsic evidence "confirms that a [trusted computing base's] hardware/software provides security to the entire computer system or network, not just to the 'first host' computer." *Id.*

In its reply, Defendant contends that Plaintiff "ignores that the claim language "associated with a trusted platform module" modifies 'a trusted computing base,' and in turn, that the claim language 'within the first host' further modifies the whole ('a trusted computing base associated with a trusted platform module'), not the part ('a trusted platform module')[.]" Reply at 2 (internal citations omitted).

Defendant contends that Applicant's "'express representations' reveal the intent to limit 'the scope of the claims,' by disclosing that 'a trusted platform module' is part of and modifies 'a trusted computing base associated with a trusted platform module,' and acquiescing to the examiner's same understanding[.]" *Id.* (internal citations omitted).

With respect to Plaintiff's argument that the trusted computing base protects the entire computer system, Defendant contends that the specification discloses the trusted computing base is within the first host. *Id.* at 3 (citing '705 Patent at 13:64–14:1, 14:2–3, 14:7–9, 14:10–12). Defendant contends that "[t]here is no disclosure in the specification describing the 'trusted computing base' as outside of the 'first host' or how such a configuration would operate." *Id.*

Defendant contends that Plaintiff's extrinsic evidence is "foreclosed by the specification and prosecution[.]" *Id.* at 4 (citing *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1377 (Fed. Cir. 2021)).

In its sur-reply, Plaintiff contends that plain language of the claims shows that "within the first host" modifies the term "trusted platform module." Sur-Reply at 1. Plaintiff contends that there is "no indication" in the claims, specification, or prosecution history, that "within the first host" also modifies the term "trusted computing base." *Id.* at 1–2. Plaintiff contends that the claims only recite that the trusted computing base is "associated with" the trusted platform module, and not that it is located within the first host. *Id.* at 2.

Plaintiff contends that Defendant cites a passage from the prosecution history ("Liang does not anticipate a trusted platform module, nor a trusted computing base associated with a trusted platform module"), but that passage does not require that the "trusted computing base" is located within "first host," only that it is "associated with the trusted platform module." *Id.*

Plaintiff contends that the passages that Defendant cites from the specification "simply state that a [trusted computing base] *may* be located within *a computer*[,]" but not that it must be within a *first host*. *Id.* (emphases in Plaintiff's brief).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. **First**, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. **Second**, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

**Third**, the claim language does not require that the trusted computing base be within the first host. *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007) ("[c]laims mean precisely what they say."). The claim language only recites a "trusted computing base associated with a trusted platform module within the first host." The fact that the trusted computing base is "associated with" the trusted platform module does not mean that the trusted computing base is in the same computer or host that the trusted platform

module is in.  Rather, the words "associated with" only describes that there is a connection or relationship between two things, and not that there is a common location for the two.

As such, Defendant's proposed construction, which requires that the trusted computing base is in the first host is incorrect as it improperly "revise[s] or ignore[s] the explicit language of the claims." *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001).

**Fourth**, with respect to the passages from the specification that Defendant cites for the proposition that the trusted computing base is in the first host, the Court disagrees as these passages only describe that the trusted computing base is in a computer.  *See* '705 Patent at 13:64–14:1, 14:2–3, 14:7–9, 14:10–12.  But there is no further disclosure that the computer could be the first host, let alone that it is limited to the first host.  Therefore, the specification does not support Defendant's proposed construction.

With respect to Defendant's argument that "[t]here is no disclosure in the specification describing the 'trusted computing base' as outside of the 'first host' or how such a configuration would operate," the Court disagrees that that argument is a reason to adopt Defendant's proposed construction.  In particular, Defendant's argument essentially requires that there must be an embodiment for every construction.  But it is black letter law that it is improper to limit a claim term to the disclosed embodiments, which means that disclosure of an embodiment is unnecessary in order to adopt Plaintiff's construction.  *Liebel-Flarsheim*, 358 F.3d at 913 ("it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").

**Fifth**, with respect to the passages from the prosecution that Defendant cites, the Court again disagrees with Defendant.  Defendant effectively argues that Applicant disclaimed claim

scope during prosecution to limit the trusted computing base to only the first host. But Defendant has not identified any statements that meet the clear and unmistakable standard necessary for disclaimer. *Genuine Enabling Tech.*, 29 F.4th at 1374 ("[f]or a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'"). Defendant cites some statements from Examiner, but those statements fall short of being a disclaimer as they are **Examiner's** statements and not **Applicant's**. *3M Innovative Prop. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1374 (Fed. Cir. 2003) ("prosecution history ... cannot be used to limit the scope of a claim unless the applicant took a position before the PTO.").

With respect to Applicant statements, Defendant's argument appears to be that because Applicant repeatedly recited specific claim language ("a trusted computing base associated with a trusted platform module") together as a block, that meant that the entire "trusted computing base associated with a trusted platform module" is "within the first host." *See* Opening, Ex. 6 at 248–49. But those types of statements fall far short of a clear and unmistakable disclaimer to require that the trusted computing base is within the first host. Furthermore, as described above, "associated with" only requires connection or a relationship, but not a location.

**Sixth**, with respect to extrinsic evidence Defendant cites, given that there is no ambiguity in the intrinsic evidence, there is no need to rely on extrinsic evidence. *Vitronics*, 90 F.3d at 1583 ("[i]n those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper."). Furthermore, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1318.

Therefore, for the reasons described above, the Court rejects Defendant's proposed construction. Accordingly, because the only substantive difference between the parties' proposed constructions is whether the "trusted computing base" is located in the "first host," the Court concomitantly adopts Plaintiff's proposed contruction.

## C. Term #3: "valid digitally signed attestation of cleanliness"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| #3: "valid digitally signed attestation of cleanliness"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning, *disjunctive* meaning | Plain and ordinary meaning, wherein the plain and ordinary meaning is that the "attestation of cleanliness" is digitally signed by and received from the "trusted computing base" |

**<u>The Parties' Positions:</u>**

Defendant contends that, in a prior case, Judge Gilstrap concluded that "attestation of cleanliness" "***must be received*** from the 'trusted computing base' in the patent claims at issue." Opening at 10 (citing Opening, Ex. 9 at 11) (emphasis in Defendant's brief). Defendant contends that this term should be construed in order to prevent juror confusion. *Id.*

Defendant contends that Claim 12 requires "contacting a trusted computing base" and requires "receiving a response" from the trusting computing base. Defendant contends that the specification recites that the "trusted code bases ***may digitally sign assertions*** about the cleanliness (e.g. infestation status) and/or state of their computers." *Id.* (citing '705 Patent at 14:10–12) (emphasis in Defendant's brief).

In its response, Plaintiff contends that the term should be construed as plain-and-ordinary meaning because Defendant has not overcome the "heavy presumption" that plain-and-ordinary

meaning should apply and because Defendant has not alleged that either of the only two exceptions (lexicography and disclaimer) apply. Response at 6.

Plaintiff contends that Judge Gilstrap did not "did *not* conclude or suggest that the 'attestation of cleanliness' must also be *signed by* the 'trusted computing base.'" *Id.* (citing Opening, Ex. 9 at 10–11) (emphasis in Plaintiff's brief). Plaintiff contends that "there is nothing 'natural' about modifying Judge Gilstrap's Order, rewriting the claims, or reading embodiments into the claims, as [Defendant] asks this Court to do." *Id.* at 6–7.

With respect to the passage Defendant cites from the specification, Plaintiff contends that that passage is only for "some embodiments," and for those embodiments, the trusted code bases "may"—not "must"—digitally sign assertions. *Id.* at 7 (citing '705 Patent at 14:10–12).

In its reply, Defendant contends that Plaintiff's response "misrepresents Judge Gilstrap's order and ignores express plain claim language." Reply at 4. Defendant contends that Judge Gilstrap only construed "attestation of cleanliness," but in this case "valid digitally signed" modifies "attestation of cleanliness." *Id.* Defendant contends that the specification "supports the express claim language, acknowledging that 'trusted code bases may digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers.'" *Id.* (citing '705 Patent at 14:10–12).

In its sur-reply, Plaintiff contends that its proposed construction "remains entirely faithful to Judge Gilstrap's claim construction order, which merely indicated that the attestation of cleanliness was *received from* the [trusted computing base]." Sur-Reply at 2 (emphasis in Plaintiff's brief). Plaintiff contends that both Judge Gilstrap's order and the claim language "do[] not require that the attestation of cleanliness must be digitally signed *by* the [trusted computing base]." *Id.* at 2–3 (emphasis in Plaintiff's brief).

Plaintiff contends that the passage Defendant cites in support of its proposed construction is only for "some embodiments" and, even then, the trusted code base "may" digitally sign assertions about the cleanliness. *Id.* at 3 (citing '705 Patent at 14:10–12). Based on that, Plaintiff contends that Defendant's proposed construction improperly attempts to read limitations in from a preferred embodiment. *Id.* (citing *AlmondNet*, Nos. 6:21-CV-00897-ADA, 6:21-CV-00898-ADA, 2023 WL 11983063 at *2).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

***Third***, there is no support in the specification for Defendant's proposed construction. The passage that Defendant cites explicitly describes that "***[i]n some embodiments***, trusted code bases ***may*** digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers." '705 Patent at 14:10–12 (emphasis added). This passage plainly describes that a trusted code base digitally signing assertions only happens for some embodiments. In other words, it is not a characteristic of all trusted code bases. It is improper to "read limitations from a preferred embodiment described in the specification[.]" *Liebel-Flarsheim*, 358 F.3d at 913.

Furthermore, this passage describes that "trusted code bases *may* digitally sign assertions," which means that some trusted code bases will not digitally sign assertions.  Given that not all trusted code bases digitally sign assertions, it would be improper to import this limitation into the Court's construction.  *Id.*

Therefore, for the reasons described above, the Court construes this term as plain-and-ordinary meaning.

### D.  Term #4: "includes at least one of an . . . and an . . ."

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #4: "includes at least one of an . . . and an . . ." U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 Proposed by Defendant | Plain-and-ordinary meaning | "includes at least one of an . . . and at least one of an . . ." |

**The Parties' Positions:**

Defendant contends that its proposed construction follows the Federal Circuit's guidance in *SIMO Holdings Inc. v. Hong Kong Network Tech. Ltd.* Opening at 11 (citing 983 F.3d 1367, 1377 (Fed. Cir. 2021) and *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004)).  Defendant contends that *SIMO* stands for the proposition that when "at least one of" is "at the start of a list of items joined together by 'and[,]'" the phrase "applie[s] to *each item in the list*, not to the list considered as a whole."  *Id.* (quoting *SIMO*, 983 F.3d at 1377) (emphasis in Defendant's brief).  Defendant contends that:

> A straightforward application of these principles here requires "***at least one of*** an attestation that the trusted computing base has ascertained that the first host is not infested," and "[***at least one of***] an attestation that the trusted computing base has ascertained the presence of a patch or a patch level associated with a software component on the first host."

*Id.* at 12 (emphases in Defendant's brief).

Defendant contends that "Judge Gilliland's decision in *Micropairing Techs. v. Gen. Motors* fully accords with this construction." *Id.* Defendant contends that other courts have reached the same determination. *Id.* (citing cases).

Defendant contends that the specification supports its proposed construction and "and does not compel a disjunctive construction." *Id.* More specifically, Defendant contends that the "inventors thus knew how to disclose embodiments requiring either one or both types of the claimed assertions" and how to claim the disjunctive form for a similar limitation. *Id.* at 12, 13 (citing '705 Patent at 14:10–12; '048 Patent, Claims 10, 17). Defendant contends that the patent also uses permissive language of "'may digitally sign' and 'may respond' as relating to each item of the series. There is otherwise no restrictive language mandating mutual exclusivity between the two." *Id.*

In its response, Plaintiff contends that

The term logically, textually, and in light of the intrinsic record should be read in the *disjunctive* as requiring *either* of two options or alternatives: (1) an attestation that the [trusted computing base] has ascertained that the first host is not infested; or (2) an attestation that the [trusted computing base] has ascertained the presence of a patch or patch level associated with a software component on the first host.

*Id.* (emphases in Plaintiff's brief). Plaintiff contends that specification supports the second option. *Id.* (citing '705 Patent at 14:9–22).

Plaintiff contends that the two options are presented as alternatives. *Id.* Plaintiff contends that the specification discloses the first option, which is an attestation that the trusted computing base has determined that the first host is not infested. *Id.* (citing '705 Patent at 14:11–12). Plaintiff contends that the specification also discloses the second option, which is an attestation that the

trusted computing base has determined the presence of a patch or patch level associated with a software component on the first host. *Id.* (citing '705 Patent at 14:19–22).

Plaintiff contends that the cases Defendant cites are distinguishable. *Id.* at 8. With respect to *SuperGuide*, Plaintiff contends that the phrase "at least one of" meant "one or more" and "modified *four categories of items*, each of which was 'further comprised of *many possible values.*'" *Id.* (citing 358 F.3d at 886) (emphases in Plaintiff's brief). Plaintiff contends that "at least one of . . . and . . .," in this case, modifies only two distinct *alternatives*, not numerous *categories* comprised of many possible values. *Id.* at 8–9 (emphases in Plaintiff's brief). Plaintiff contends that *SuperGuide* "does not set forth a rule that 'at least one of . . . and . . .' must be construed as conjunctive" and that courts regularly distinguish it "when faced with binary claim language like that presented in this case." *Id.* (citing cases).

With respect to *MicroPairing*, Plaintiff contends that Judge Gilliland 'similarly adopted a *disjunctive* reading of "at least one of . . . and . . .' in distinguishing *SuperGuide*, noting that 'the claim at issue in *SuperGuide* listed criteria consisting of four categories, where each category was further comprised of many possible values' from which a user must choose." *Id.* at 9–10 (citing No. SA-21-cv-00940-XR, 2022 WL 62540, at *19 (W.D. Tex. Jan. 5, 2022)). Judge Gilliland further concluded that "'at least one of . . . and . . .' should be read as *disjunctive* because 'the term appears in claim language reciting an *option of two rather than a list*' and because 'a person of ordinary skill in the relevant art at the time of the invention would have understood that *the patentee used the term to indicate alternatives.*'" *Id.* at 10 (citing 2022 WL 62540, at *20) (emphases in Plaintiff's brief). Plaintiff contends that Defendant ignores this part of Judge Gilliland's conclusion. *Id.*

In its reply, Defendant contends that this term is not disjunctive as Plaintiff claims, but is conjunctive.  Reply at 5.

Defendant contends that Plaintiff "misreads" the specification.  *Id.*  More specifically, Defendant contends that the specification discloses that the invention "may contain both" attestations.  *Id.* (citing '705 Patent at 14:11–12, 14:19–22).

Defendant contends that Plaintiff also "misreads" the case law.  *Id.*  More specifically, Defendant contends that Plaintiff "fails to engage with *SIMO* or the grammatical principles clarified within, and instead cites case law that either predates or did not consider *SIMO*."  *Id.* at 5–6.

In its sur-reply, Plaintiff contends that the claims and specification indicate that there are two options to support a cleanliness finding, namely, (1) an attestation that the trusted computing base has determined that the first host is not infested and (2) an attestation that the trusted computing base has determined that the host computer has been "patched."  Sur-Reply at 3–4.

With respect to Defendant's argument that the specification discloses that the invention may contain both attestations, Plaintiff contends that the specification discloses that each attestation option are in separate, alternative embodiments.  *Id.* at 4 (citing '705 Patent at 14:10– 12, 14:19–22).

Plaintiff contends that it did not engage with *SIMO* because the claim language is different ("a plurality of" versus "includes at least one of an . . . and an . . .").  *Id.*  Plaintiff contends that the claims and specification disclose "two separate and distinct alternatives for ascertaining the 'cleanliness' of a computer[,]" but that only one is required for the claim limitation to be met.  *Id.* (citing cases).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

***Third***, the Court agrees with Plaintiff that the claim language recites two options. *See, e.g.*, '705 Patent, Claim 12 ("at least one of [1] an attestation that the trusted computing base has ascertained that the first host is not infested, and [2] an attestation that the trusted computing base has ascertained the presence of a patch or a patch level associated with a software component on the first host." (annotations added)). The first option is an attestation the first host is not infected, which indicates that the first host is "clean." *Id.* The second option is an attestation the first host has been patched, which also indicates that the first host is "clean." *Id.* Because both of these options attest to the "cleanliness" of the first host, using different approaches, the claims present binary alternatives. As such, term is disjunctive, not conjunctive.

Furthermore, given that each option is a single alternative—and not a category with multiple values—Defendant's argument that "at least one of" should modify both alternatives does not make sense as each option is only a single alternative. Defendant's proposed construction would effectively construe "at least one of" to mean "both," which is improper. *Generation II Orthotics*, 263 F.3d at 1365 (holding that a proposed claim construction must not "revise or ignore the explicit language of the claims").

*Fourth*, the specification describes that these two options are binary alternatives.  More specifically, with respect to the first option, the specification describes that "*[i]n some embodiments*, trusted code bases may digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers."  *Id.* at 14:10–12 (emphasis added).  Two sentences later, the specification describes the second option as "*[i]n some embodiments*, an operating system may respond with information associated with its patch level, wherein a sufficiently recent patch level may be interpreted as an assertion of cleanliness."  *Id.* at 14:19–22 (emphasis added).  Given that the specification describes these two options in close proximity and as different embodiments indicates that the two options are binary alternatives.

*Fifth*, the Court agrees with Plaintiff that *SIMO* and *SuperGuide* are distinguishable.  With respect to *SIMO*, the phrase at issue was "a plurality of," which is entirely different than the phrase at issue in this case, "at least one of."  983 F.3d at 1377.  With respect to *SuperGuide*, the Federal Circuit concludes that the phrase "at least one of" modifies each category in the criteria list, *i.e.*, one or more values in each category are required.  358 F.3d at 886.  By contrast, in this case, the claim language does follow the phrase "at least one of" does not recite categories with multiple values, but rather a single alternative.

Therefore, for the reasons described above, the Court construes this term as plain-and-ordinary meaning, but that the term is disjunctive.

### E.  Term #5: "quarantine" or "quarantining"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #5: "quarantine" or "quarantining"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and | Plain-and-ordinary meaning | "isolating from the protected network" |

| U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | | |
|---|---|---|

**The Parties' Positions:**

Defendant contends that the Court should adopt its proposed construction to "prevent juror confusion."  Opening at 14.

Defendant contends that the specification demonstrates that to "quarantine" is to "isolate." *Id.*  Defendant contends that the titles of the two patents are similar: "Contagion Isolation and Inoculation" and "Contagion Isolation and Inoculation via Quarantine," which can aid in claim construction.  *Id.* (citing *Wireless, Inc. v. Innovative Wireless Solutions, LLC*, 824 F.3d 999, 1003 n.2 (Fed. Cir. 2016)).  Defendant further contends that the specification recites "[i]f the host is required to be quarantined, the host is provided only limited access to the protected network."  *Id.* (citing '705 Patent at 3:8–16).  Defendant contends that the specification "indicates that the 'quarantined host' is isolated or quarantined from the protected network except for accessing a remediation server." *Id.* (citing '705 Patent at 12:3–7).

Defendant contends that the claims "make clear that the term 'quarantine' or 'quarantining' relates to isolating from the protected network[.]"  *Id.* (citing '705 Patent, Claims 12, 18; '048 Patent, Claim 17).  Defendant contends that

> the asserted patents make clear that the invention seeks to secure the protected network by isolating the host from the network: "***Contagion isolation*** and inoculation is disclosed. In some embodiments, a request is received from a ***host***, *e.g.*, via a network interface, ***to connect to a protected network***. It is determined whether the host is ***required to be quarantined***."

*Id.* at 15 (quoting '705 Patent at 3:8–11) (emphases in Defendant's brief).

Defendant contends that extrinsic evidence supports its proposed construction. *Id.* Defendant first contends that contemporaneous dictionaries define that to "quarantine" means to "isolate." *Id.* (citing dictionaries). Defendant next contends that "the prior art demonstrates how skilled artisans used 'quarantine' interchangeably with 'isolate' at the time of invention." *Id.* (citing Opening, Exs. 14 at [0015], 15 at 125).

In its response, Plaintiff contends that Defendant's proposed construction is inconsistent with the intrinsic evidence, but also improperly rewrites the claims. Response at 11. Plaintiff contends that here "'quarantining' and 'isolating' are not used synonymously or interchangeably in the asserted patents." *Id.*

Plaintiff contends that the claims and specifications "unambiguously teach that a quarantined host computer must be able to communicate with other components of the claimed system, for example to access remediation services," such that "[i]f the host computer was truly 'isolated'," then a "significant purpose of the claimed invention would be stymied." *Id.* (citing '705 Patent at 11:39–40). Plaintiff contends that the specification describes that remediation services include "allowing connections to servers providing security patches or advisories[.]" *Id.* at 11–12 (citing '705 Patent at 11:41–43).

With respect to extrinsic evidence, Plaintiff contends that Defendant cites two non-technical dictionaries to support its proposed construction. *Id.* at 12. Plaintiff contends that extrinsic evidence is less significant than intrinsic evidence, in general, and, in this case, the extrinsic evidence is not consistent with the intrinsic evidence, which discloses that a quarantined computer may access the network for remediation. *Id.*

Plaintiff contends that the term should be construed as plain-and-ordinary meaning because Defendant has not overcome the "heavy presumption" that plain-and-ordinary meaning should

apply and because Defendant has not alleged that either of the only two exceptions (lexicography and disclaimer) apply. *Id.*

In its reply, Defendant contends that the patentee acted as their own lexicographer. Reply at 6. More specifically, Defendant contends that the specification discloses that the "quarantined host" is isolated or quarantined from the protected network except for accessing a remediation server. *Id.* Defendant contends that "[q]uarantining allows for both isolation ('the general case') and inoculation ('the exception'); accessing remediation is permitted under the exception." *Id.* at 6–7. Defendant further contends that claims "expressly include the exception, 'permit the first host to communicate with the remediation host,' to distinguish the general case, 'quarantine the first host.'" *Id.* at 7 (citing '705 Patent, Claim 12).

Finally, Defendant contends that its extrinsic evidence is consistent with the inventor's lexicography. *Id.* (citing Opening, Ex. 14 at [0015]).

In its sur-reply, Plaintiff contends that Defendant's proposed construction improperly rewrites the claims by replacing "quarantining" with "isolating." Sur-Reply at 5. Plaintiff contends that the patentee did not act as their own lexicographer because they failed to clearly set forth a definition and did not clearly express an intent to redefine the term. *Id.* Plaintiff contends that an "isolated" host cannot access remediation services. *Id.* Plaintiff further contends that the claims, specification, and prosecution history never use "quarantined" with "isolated" synonymously. *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for

the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning are lexicography and disclaimer. *Thorner*, 669 F.3d at 1365. Defendant does not allege disclaimer, but do allege that the patentee acted as their own lexicographer.

But Defendant does not cite a single passage in support of lexicography, nor does Defendant explain why the elements of lexicography are present here. *Hill-Rom Servs.*, 755 F.3d at 1371 (Fed. Cir. 2014) ("[t]o act as its own lexicographer, a patentee must [1] clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and must [2] "clearly express an intent to redefine the term.") (annotations added). Therefore, the Court concludes that Defendant fails well short of the "exacting" standard required for lexicography. *Id.* ("[t]he standards for finding lexicography and disavowal are exacting.")

In addition, Defendant did not allege lexicography until its reply brief, so that argument is waived. *Jackson*, 426 F.3d at 304 n. 2 ("[a]rguments raised for the first time in a reply brief, even by pro se litigants ... are waived.").

***Third***, the intrinsic evidence does not use "quarantining" and "isolating" synonymously. Defendant primarily relies on the fact that the two patents share similar titles ("Contagion Isolation and Inoculation" and "Contagion Isolation and Inoculation via Quarantine"). But the former title does not even mention "quarantine," let alone equate it to "inoculation." The second title describes that "isolation" (and "inoculation") may be achieved "quarantine," which does not equate the two.

Furthermore, Defendant's own argument undermines its proposed construction. More specifically, Defendant argues that "[q]uarantining allows for both isolation ('the general case') and inoculation ('the exception')[.]" Reply at 6–7. This passage describes that "quarantining" is

broader than "isolation" as it also includes "inoculation." As such, "quarantine" is not synonymous with "isolate," which shows that Defendant's proposed construction improperly limits the claim scope.

*Fourth*, Defendant's proposed construction improperly excludes some disclosed embodiments. *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("[w]e normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification. . . . where claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence to the contrary."). More specifically, the specification describes that a quarantined host can still communicate with the other components in the network for the purpose of accessing remediation. '705 Patent at 11:38–54; Figures 14, 15. By requiring the quarantined host to be "isolated," Defendant's proposed construction improperly excludes these embodiments.

*Fifth*, with respect to the extrinsic evidence Defendant cites, given that there is no ambiguity in the intrinsic evidence, there is no need to rely on extrinsic evidence. *Vitronics*, 90 F.3d at 1583 ("[i]n those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper."). Furthermore, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1318. Finally, the extrinsic evidence Defendant cites are not particularly helpful as they are non-technical dictionaries, an unrelated patent publication, and an unrelated article.

Therefore, for the reasons described above, the Court construes this term as plain-and-ordinary meaning.

### F.  Term #6: "quarantine server"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #6: "quarantine server"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning | "server to which a quarantined host's network traffic is redirected" |

**The Parties' Positions:**

Defendant contends that its proposed construction "clarifies for the jury" that the difference between quarantine servers and generic servers. Opening at 16. Defendant contends that the specification distinguishes quarantine servers from generic servers; namely, that the purpose of the quarantine server is to redirect network traffic from a quarantined host. *Id.* at 17 (citing '705 Patent at 15:63–65, 12:7–12). Defendant contends that Figure 10B depicts that the quarantine server and remediation server are separate, "further reinforcing how traffic is redirected when appropriate." *Id.*

In its response, Plaintiff contends that Defendant's proposed construction improperly attempts to read embodiments into the claim term. Response at 13. Plaintiff contends that Defendant's proposed construction is too narrow as it excludes "further flow to another host or server for purposes of remediation." *Id.* Plaintiff contends that "[n]othing in the specification of the asserted patents states that the entirety of a 'quarantined host's network traffic' is redirected to *and stops at* a server such as the quarantine server." *Id.* (emphasis in Plaintiff's brief).

Plaintiff contends that the specification describes that the quarantine server is a server that "allows an infected host to be quarantined and, later, remediated." *Id.* (citing '705 Patent at 11:39–40). Plaintiff contends that not all network traffic from an infected host is redirected to a quarantine

server, but rather some network may be redirected to a remediation host. *Id.* (citing '705 Patent at 3:14–16). Plaintiff contends that Figure 10B depicts that network traffic "can flow from a plurality of possibly quarantined host computers (Host 1020, Host 1022, etc.) to a router 1026, then to a gateway 1028, and eventually to a quarantine server 1034." *Id.* at 14.



Plaintiff contends that the term should be construed as plain-and-ordinary meaning because Defendant has not overcome the "heavy presumption" that plain-and-ordinary meaning should apply and because Defendant has not alleged that either of the only two exceptions (lexicography and disclaimer) apply. *Id.*

In its reply, Defendant contends that its proposed construction is "consistent with the intrinsic evidence and would assist the jury to distinguish between different types of servers." Reply at 7.

With respect to Plaintiff's argument that not all traffic from the infected host is redirected to the quarantine server, Defendant contends that other components in the system ("processor" in Claim 12 and computer program product in Claim 19) "permit the first host to communicate with the remediation host." *Id.*

In its sur-reply, with respect Defendant's argument that construction is necessary for the jury, Plaintiff contends that "different servers are assigned different names by their adjectives, and a reasonable jury would understand, for example, that a 'quarantine server' performs different functions than a 'remediation server.'" Sur-Reply at 6.

Plaintiff contends that the claims "make clear that a quarantined host is not simply sent to 'time out' on the quarantine server but is further permitted 'to communicate with the remediation host.'" *Id.* at 7 (citing '705 Patent, Claim 19). Plaintiff contends that passages like this demonstrate that Defendant's proposed construction is incorrect and would only confuse the jury. *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general

rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

**Third**, Defendant's proposed construction improperly renders some claim language to be superfluous. *Wasica Finance GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) ("[i]t is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."). More specifically, Claim 22, for example, recites that an infected host may communicate with the remediation server. Defendant's proposed construction requires that all network flow from the infected host go to, and stop at, the quarantine server, which renders the claim language requiring communication between the infected host and the remediation server to be superfluous.

**Fourth**, Defendant's proposed construction improperly excludes some embodiments. *Oatey*, 514 F.3d at 1276 ("[w]e normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification. . . . where claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence to the contrary."). More specifically, the specification describes that the infected host may communicate with the remediation server to remedy the infection. '705 Patent at 3:14–23. Defendant's proposed construction, which requires that all network traffic is directed to the quarantine server and stopped, improperly excludes these embodiments.

**Fifth**, with respect to Defendant's argument that the Court should construe this term to help the jury, the Court disagrees. In particular, the Court agrees with Plaintiff that the adjective before "server," *e.g.*, "quarantine" or "remediation," should provide the jury with enough information to differentiate a "quarantine server" as compared to a "remediation server."

Therefore, for the reasons described above, the Court construes this term as plain-and-ordinary meaning.

## G. Term #7: "remediation host configured to provide data usable to remedy the insecure condition"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| #7: "remediation host configured to provide data usable to remedy the insecure condition" <br><br> U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18 <br><br> Proposed by Defendant | Plain-and-ordinary meaning | Subject to 35 U.S.C. § 112(f). <br><br> **Function**: "provide data usable to remedy the insecure condition: <br><br> **Structure**: Indefinite |

**The Parties' Positions Whether § 112, ¶ 6 Applies:**

Defendant contends that "remediation host" is a nonce term that lacks definite structure because it is "not adopted into use generally." Opening at 18 (citing *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020)). Rather, Defendant contends that it is a coined term that has no meaning outside this patent family. *Id.* (citing *Diebold Nixdorf, Inc. v. ITC*, 899 F.3d 1291, 1302 (Fed. Cir. 2018)).

Examining the individual words, Defendant contends that "host" is a "verbal construct that serves as shorthand for any computer that can perform a function" while "remediation" is "'simply an adjective describing' the function of 'host' and 'not a structure or material capable of performing the identified function.'" *Id.* (citing *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007)).

Defendant contends that the Federal Circuit has held that claim language reciting what a term is "configured to" do is functional. *Id.* at 19 (citing *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1343 (Fed. Cir. 2019)).

Defendant contends that the last portion of the term, "provid[ing] data usable to remedy the insecure condition," is "entirely functional and devoid of structure." *Id.*

Defendant finally contends that the specification "reinforces" that the term is subject to § 112, ¶ 6. *Id.* Defendant contends that the closest word to "remediation host" in the specification is "remediation host name," which the specification describes as "providing anti-contagion software, or a host providing security updates, or a host internal to (or partnered with) an ISP." *Id.* (quoting '705 Patent at 16:19–23). Defendant contends that the specification's use of "providing" after "host" "demonstrates the functional characterization of host in this passage and fails to provide any definite structure." *Id.*

In its response, Plaintiff contends that because the term does not contain the word "means," the presumption is that § 112, ¶ 6 does not apply. Response at 14.

Plaintiff contends that Defendant admits that "host" is a well-known term of art. *Id.* (citing Opening at 18). Plaintiff contends that, even accepting Defendant's characterization that "host" is a "computer," courts frequently find that those terms are not subject to § 112, ¶ 6. *Id.* at 14–15 (citing cases).

Plaintiff contends that Claim 12, for example, "treat[s] 'host' as structure by … reciting a 'trusted computing base associated with a trusted platform module *within* the first host.'" *Id.* at 15 (citing ECF No. 43-11 (Cole Decl.) at ¶¶ 29–32) (emphasis in Plaintiff's brief). Based on that, Plaintiff contends that "[i]t makes no sense to say that the trusted platform module is located within a functional placeholder; structure is required." *Id.* at 15–16 (citing *Phillips*, 415 F.3d at 1311).

Plaintiff contends that the specification also describes the host as having structure by "illustrating hosts as structural components within the networked environment." *Id.* at 16 (citing '705 Patent at Figure 10B; ECF No. 43-11 (Cole Decl.) at ¶¶ 33–34).

Plaintiff contends that a POSITA would understand that the claim requires that the "remediation host" communicates with the "first host" and that the "remediation host" sends data usable to remedy the insecure condition" to other hosts in need of remediation. *Id.* In other words, Plaintiff contends that "the claims themselves describe the remediation host's connections and outputs in the context of the claims, which in and of itself demonstrates that 'remediation host' connotes structure to a POSITA." *Id.* (citing cases).

Plaintiff contends that the specification implies that the "remediation host" is a server, which courts frequently find to connote structure. *Id.* at 17 (citing cases). Plaintiff further contends that "remediation host" is a "structural component of the networked environment rather than a functional black box." *Id.* (citing '705 Patent at Figure 10B; ECF No. 43-11 (Cole Decl.) at ¶¶ 33–34, 42). Plaintiff contends that, based on the descriptions in the specification, a POSITA would understand that "remediation host" is a class of conventional systems known in the art. *Id.* (citing '705 Patent at 11:47–50, 14:55–56; ECF No. 43-11 (Cole Decl.) at ¶¶ 53–59).

Plaintiff finally contends that, while it provides an expert declaration to explain that a POSITA would understand that "remediation host" connotes definite structure, Defendant does not provide its own expert declaration. *Id.* As such, Plaintiff contends that its expert declaration is unrebutted, so the term is not subject to § 112, ¶ 6. *Id.* (citing *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1368 (Fed. Cir. 2022)).

In its reply, Defendant contends that Plaintiff and its expert do not "point to any definition or usage of 'remediation host' outside the asserted patents—nor can they because the term is only

used in related patents." Reply at 8. Defendant further contends that Plaintiff and its expert "[r]eliance on dictionaries, including describing 'host' as a 'computer system' that 'executes, supports, or facilitates certain processes or operations'—reinforce [Defendant's] contention: 'host' is anything that 'perform[s] a certain computation or function' or 'provides services[.]'" *Id.* Based on that, Defendant contends that "host" "refers only to a general category of whatever may perform specified functions[.]" *Id.* at 8–9 (citing *Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014)).

With respect to Plaintiff's arguments regarding the claims use of "first host," Defendant contends that "the claim term 'first host' is modified by other claim language providing some structure," *e.g.*, "software component," "operating system," and "trusted computing base associated with a trusted platform module within the first host[,]" so "first host" does not have its own definite structure. *Id.* at 9 (citing '705 Patent, Claims 12, 16, 19). With respect to Plaintiff's arguments regarding the claims use of "processor," Defendant contends that "processor" does not connote structure because "processor" only recites "'permit[ting] the first host to communicate with the remediation host,' not the structure of the remediation host itself." *Id.* (citing '705 Patent, Claims 12, 19).

With respect to the specification, Defendant contends that the specification provides "no disclosure of **how** the claimed "remediation host" provides the functional anti-contagion software or security updates as described in column 16, lines 19–23." *Id.* at 9–10 (emphasis in Defendant's brief). With respect to Plaintiff's argument that the specification uses "host" and "server" interchangeably, Defendant contends that the patentee knew how to do so, but chose not to do so. *Id.* at 10.

In its sur-reply, Plaintiff contends that Defendant does not dispute that "the claims themselves provide structure" or "a POSITA would understand "remediation host" refers to classes of existing structures."  Sur-Reply at 7.  Plaintiff contends that "[e]ither of these failures is dispositive and devastates [Defendant's] invalidity position."  *Id.*  Plaintiff contends that Defendant failure to rebut Plaintiff's expert also prevents them from overcoming the presumption that § 112, ¶ 6 does not apply.  *Id.* at 7–8.

With respect to Defendant's argument that "remediation host" is a coined term that does not appear outside the patents, Plaintiff contends that argument is a "strawman" and the correct analysis is whether the term connotes definite structure.  *Id.* at 8.  Plaintiff contends that courts routinely have found that "host" connotes definite structure and that Defendant does not even "pretend that 'host' does not connote structure in the Asserted Patents."  *Id.* at 8, 9.

Plaintiff contends that Defendant "asks the Court to *ignore* other uses of 'host' in the Asserted Patents."  *Id.* at 8 (emphasis in Plaintiff's brief).  Rather, Plaintiff contends that the other uses of "hosts" are useful to determine whether this claim term is subject to § 112, ¶ 6.  *Id.* (citing cases).

With respect to Defendant's argument that the patentee knew chose to claim "remediation server" and not "remediation host," so the latter cannot mean the former, Plaintiff contends that Federal Circuit precedent contradicts Defendant's argument.  *Id.* at 9 (citing *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1358-59 (Fed. Cir. 2011)).

### **The Court's Analysis Whether § 112, ¶ 6 Applies:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that the term is not subject to § 112, ¶ 6 for the reasons that follow.  ***First***, because

the claim term does not recite "means," the presumption is that § 112, ¶ 6 does not apply. *Williamson*, 792 F.3d at 1348.

**Second**, rather than being a nonce term as Defendant argues, the Court agrees with Plaintiff that "host" is a class of conventional systems known in the art. ECF No. 43-11 (Cole Decl.) at ¶ 54. Furthermore, the Court also agrees with Plaintiff that the "host" and "server" are frequently used interchangeably to mean the same thing, and the specification does exactly that. *See, e.g.*, '705 Patent at 12:8–9. As described in Plaintiff's Response, courts frequently find that "server" connotes structure. Response at 17.

**Third**, the claim term connotes definite structure because claims describe the inputs and outputs of the "remediation host." *Apple*, 757 F.3d at 1299, *rev'd on other grounds by Williamson*, 792 F.3d at 1349. In general, the claims are directed towards a system and method for protecting a network, of which the "remediation host" is one structural component. Furthermore, Claims 1, 12, 19 describes that the "first host" communicates with the "remediation host." *See, e.g.*, '705 Patent, Claim 12, Limitation [d]. These claims also describe that the remediation host "provide[s] data usable to remedy the insecure condition." *See, e.g.*, *id.*

**Fourth**¸ Plaintiff provides an expert declaration that a POSITA would understand that "remediation host" connotes definite structure, which is unrebutted by Defendant. As such, Defendant cannot overcome the presumption that this term is not subject to § 112, ¶ 6. *Dyfan*, 28 F.4th at 1368.

Therefore, for at least these reasons, the Court concludes that Defendant has not overcome the presumption that § 112, ¶ 6 does not apply.

***Construction***: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Defendant does not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that the term is not subject to § 112, ¶ 6 and should be construed according to its plain-and-ordinary meaning.

## IV.    CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below constructions as its final constructions.

**SIGNED** this 28th day of October, 2025.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #1: "protected network"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning | "private network, distinct from public networks like the Internet" | Plain-and-ordinary meaning |
| #2: "trusted computing base"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by both sides | "hardware or software that has been designed to be a part of the mechanism that provides security to a computer system" | "hardware or software within the first host that provides security to the host" | "hardware or software that has been designed to be a part of the mechanism that provides security to a computer system" |
| #3: "valid digitally signed attestation of cleanliness"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning | Plain and ordinary meaning, wherein the plain and ordinary meaning is that the "attestation of cleanliness" is digitally signed by and received from the "trusted computing base" | Plain-and-ordinary meaning |

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #4: "includes at least one of an . . . and an . . ."<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19<br><br>Proposed by Defendant | Plain-and-ordinary meaning, *disjunctive* meaning | "includes at least one of an . . . and at least one of an . . ." | Plain-and-ordinary meaning, *disjunctive* meaning |
| #5: "quarantine" or "quarantining"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning | "isolating from the protected network" | Plain-and-ordinary meaning |
| #6: "quarantine server"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning | "server to which a quarantined host's network traffic is redirected" | Plain-and-ordinary meaning |

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|------|-----------------------------------|-----------------------------------|---------------------------|
| #7: "remediation host configured to provide data usable to remedy the insecure condition"<br><br>U.S. Patent No. 8,234,705, Claims 12, 13, 16 and 19 and U.S. Patent No. 9,516,048, Claims 10, 11, 14, 17, and 18<br><br>Proposed by Defendant | Plain-and-ordinary meaning | Subject to 35 U.S.C. § 112(f).<br><br>**Function**: "provide data usable to remedy the insecure condition:<br><br>**Structure**: Indefinite | Not subject to § 112, ¶ 6. Plain-and-ordinary meaning. |